**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.**

Plaintiffs FRANCINE RADTKA, CATHERINE
HERN, JENNY HICKS, PAMELA WILLIAMS,
JANE HATTEN, LISA ROHDY, KIMBERLY
SPARKS, TINA POWELL, LINDA MEDLIN,
TERESA RAINEY, GRETCHEN ADAMS,
YOLANDA BORRAS, ANN MOWREY, TERESA
EVANS CLUFF, TONYA COLSON, SHERRY
HUE, JAMIE ESTEVEZ, VANESSA MCKEVER,
VALERIE BLACKSHEAR, ANNE MANTELLO,
CATHERINE BUSALACCHI, MELISSA
KOFERL, CYNTHIA SIMMONS, DIANE
JOHNSON, CATHERINE JACOBSON, LAURA
PARSONS, KATHLEEN GRAVEDONI, LISA
YOUMAN, BETTY MOORE, KORBY MILLER,
MAGGIE GIBBS, KIMBERLY ROBERTS,
TANISHA WILLIAMS, and RHONDA WATERS

                       Plaintiffs,

v.

WAL-MART STORES, INC.,

                    Defendant.

_____/

**COMPLAINT**

Plaintiffs FRANCINE RADTKA, CATHERINE HERN, JENNY HICKS, PAMELA

WILLIAMS, JANE HATTEN, LISA ROHDY, KIMBERLY SPARKS, TINA POWELL,

LINDA MEDLIN, TERESA RAINEY, GRETCHEN ADAMS, YOLANDA BORRAS, ANN

MOWREY, TERESA EVANS CLUFF, TONYA COLSON, SHERRY HUE, JAMIE

ESTEVEZ, VANESSA MCKEVER, VALERIE BLACKSHEAR, ANNE MANTELLO,

CATHERINE BUSALACCHI, MELISSA KOFERL, CYNTHIA SIMMONS, DIANE

JOHNSON, CATHERINE JACOBSON, LAURA PARSONS, KATHLEEN GRAVEDONI, LISA YOUMAN, BETTY MOORE, KORBY MILLER, MAGGIE GIBBS, TANISHA WILLIAMS, KIMBERLY ROBERTS, and RHONDA WATERS [hereinafter referred to as "*Radtka* Plaintiffs"] bring this action against Wal-Mart Stores, Inc.,   [Wal-Mart] in their individual capacities.   Plaintiffs allege, upon their own personal knowledge and/or upon information and belief, the following:

## INTRODUCTION

1.      Plaintiffs, and each of them,  bring this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq*., against Wal-Mart for its discriminatory practices against them based on their gender as set forth herein.

## JURISDICTION AND VENUE

2.      Plaintiffs' claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ 1331 and 1343(a)(4).

3.      Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391(b) & (c).   Each of the named Plaintiffs' claims arose in whole or in part in Florida and many of the acts complained of occurred in this judicial district and gave rise to the claims alleged.

## BACKGROUND - CASE HISTORY

4.      This action springs from *Dukes v. Wal-Mart*, the national class action filed more than ten years ago.  In *Dukes*, the United States District Court for the Northern District of California certified a national class of female Wal-Mart and Sam's Club employees challenging Wal-Mart's retail store pay and management promotion policies as

discriminatory against women. On June 20, 2011, the United States Supreme Court reversed that class certification order.

5.     Plaintiffs were members of the national class certified in *Dukes*. While that certification order was working its way through the appellate process, time periods for filing EEOC charges and subsequent litigation for all former class members were tolled. On August 19, 2011, the Northern District of California issued an order in *Dukes* establishing common deadlines for all members of the formerly certified class to file individual charges with the EEOC. The pertinent portion of that order in this case gave former class members in states with a work-sharing agreement who would normally have 300 days to file charges, until May 25, 2012 to file a charge. Plaintiffs have met that deadline.

6.     This action also follows the litigation set forth in *Love et. al. v. Wal-Mart Stores, Inc*. Case No. 12-cv-61959/SCOLA (S.D.Fla.2012), which was dismissed with prejudice by the parties and subject to an Order of Dismissal by the Honorable Robert Scola on October 22, 2015.

7.     Subsequent to the dismissal in *Love*, Applicants in Intervention Kathleen Forbes, Linda Ray, Judith Danneman, and Edna Remington ["*Forbes* Plaintiffs"] filed a Motion for Leave to Intervene in the *Love* matter (*Love*, DE 264). That Motion was denied by Judge Scola on or about November 18, 2015. (*Love*, DE 269), denial of which was not disturbed on appeal on or about January 3, 2017 (Penelope Morris, et al v. Wal-Mart Stores, Inc Case No. 15-15260, 11th Circuit). On September 6, 2017, the Eleventh Circuit issued a mandate affirming dismissal of the appeal of the district

court's dismissal of the class claims and holding the motion to intervene moot.  (Case No. 0:12-cv-61959, August 3, 2017).

8.    Thereafter, on November 7, 2017,  the *Forbes* Plaintiffs Kathleen Forbes, Linda Ray, Judith Danneman, and Edna Remington filed an action *Forbes v. Wal-Mart Stores, Inc.* Case Number 17-cv-81225 by the Plaintiffs).   That   Complaint originally contained class allegations.

9.    After the *Forbes* case was filed, the U.S. Supreme Court granted the petition for writ of certiorari in *China Agritech, Inc. v. Resh*, No. 17-432 ("*Resh*") to consider whether the rule of *American Pipe and Construction Co. v. Utah* tolls statutes of limitations to permit a previously absent class member to bring a subsequent class action that would otherwise be outside the applicable limitations period. *Resh*, No. 17-432, 2017 WL 4224769, at *1 (U.S. Dec. 8, 2017).  Given the impact of *Resh* on this class aspect of action, the parties agreed to stay of the *Forbes* case pending the outcome of  *Resh*. (See Order  D.E. 20)

10.    *Resh* was decided on June 11, 2018.  Consistent with the holding in *Resh,* the *Forbes* Plaintiffs amended their complaint to be filed in their individual capacities. That case remains pending before Judge Scola.

11.    The Equal Employment Opportunity Commission [EEOC] issued several right to sue notices for several additional plaintiffs with similar claims for gender  discrimination.

12.    On November 2, 2018, the *Forbes* Plaintiffs sought to amend their complaint by including several  of  those additional Plaintiffs. The *Forbes* Plaintiffs timely filed a Motion to Amend to include the following additional Plaintiffs:

a.  Catherine Hern, Jenny Hicks, Francine Radtka, Pamela Williams, Jane Hatten, Lisa Rohdy, Kimberly Sparks, Tina Powell, Linda Medlin, Teresa Rainey, Gretchen Adams, Yolanda Borras, Ann Mowrey, Teresa Evans Cluff, Tonya Colson, Sherry Hue, Jamie Estevez, Vanessa McKever, Valerie Blackshear, Anne Mantello, Catherine Busalacchi, Melissa Koferl, Cynthia Simmons, Diane Johnson, Catherine Jacobson, Laura Parsons, Kathleen Gravedoni, Lisa Youman, Betty Moore, Korby Miller, Maggie Gibbs, and Rhonda Waters   [*Radtka* Plaintiffs] [See *Forbes* D.E. 39].

b.  As the *Radtka* Plaintiffs approached the 90 day deadline prescribed by the Right to Sue Notices, the *Forbes* Motion to Amend remained opposed by Wal-Mart and undecided with the court. As such, in order to preserve their rights and proceed with their claim, the *Radtka* Plaintiffs opted to file this separate action. The *Radtka* Plaintiffs file this action  together with two additional Plaintiffs, Kimberly Roberts and Tanisha Williams.

c.  Contemporaneous with this filing a group of other plaintiffs, who also received their Right to Sue Notices filed a separate action. That case *Jewell Price, et al. v. Wal-Mart Stores, Inc.* involved similar claims of gender discrimination. Unlike the Love, Forbes, and *Radtka* Plaintiffs, that seek relief for both pay and promotional issues, the *Price* case involves just pay claims.

13.  The relevant time period in this action for the *Radtka* Plaintiffs' claims is based on the limitations period from *Dukes*. The limitations period starts on December 26, 1998, which is 300 days before the earliest charge filed with the EEOC by a former member of the *Dukes* class, and runs through the date of trial.

**Exhaustion of Remedies**

14. The current *Radtka* Plaintiffs have exhausted their administrative remedies and complied with the statutory prerequisites of Title VII by timely filing charges of discrimination.

15. In particular, Plaintiffs have timely filed EEOC charges and Amended EEOC Charges (See Exhibit A, a composite exhibit).

16. More than 180 days have lapsed since Plaintiffs filed their Charges.

17. Plaintiffs have also requested their Rights to Sue from the Equal Employment Opportunities Commission, but have yet to receive.

**PARTIES**

18. Plaintiff Catherine Busalacchi is a female resident of Washington County, Wisconsin. She was employed by Wal-Mart from 1991 until 2005, and worked during that period in Store 1957 which is in Wal-Mart Region 10, and Store 1635, in Wisconsin.  Upon information and belief, Ms. Busalacchi is eligible for rehire.

19. Plaintiff Melissa Koferl is a female resident of Lee County, Florida. She was employed by Wal-Mart from 2003 until 2006, and worked during that period in Store 0987 and 0819 which are both in Wal-Mart Region 10.  Upon information and belief, Ms. Koferl is eligible for rehire.

20. Plaintiff Cynthia Simmons is a female resident of Hillsborough County, Florida. She was employed by Wal-Mart from 1998 through 2004, and worked during that period in Stores 0941 and 0547, which are both in Wal-Mart Region 10.  Upon information and belief, Ms. Simmons is eligible for rehire.

21.     Plaintiff Diane Johnson is a female resident of Lee County, Florida. She was employed by Wal-Mart from 2005 through 2010, and worked during that period in Store 623 and 5034, which are both in Wal-Mart Region 10.  Upon information and belief, Ms. Johnson  is eligible for rehire.

22.     Plaintiff Catherine Jacobson is a female resident of Pasco County, Florida. She was employed by Wal-Mart from 1987 through 1988 and again from 1988 through 2002, and worked during that period in Store 994, which is in Wal-Mart Region 10.  Upon information and belief, Ms. Jacobson is eligible for rehire.

23.     Plaintiff Catherine Hern is a female resident of St. Lucie County, Florida. She was employed by Wal-Mart from 2002 through 2002, and worked during that period in Store 0973, which is in Wal-Mart Region 10.  Upon information and belief, Ms. Hern is eligible for rehire.

24.     Plaintiff Jenny Hicks is a female resident of Manatee County, Florida. She was employed by Wal-Mart from 1997 through 2000, and worked during that period in Store 0528, which is in Wal-Mart Region 10.  Upon information and belief, Ms. Hicks is eligible for rehire.

25.     Plaintiff Francine Radtka is a female resident of Manatee County, Florida. She was employed by Wal-Mart from 1995 through 2000, and worked during that period in Store 315, which is in Wal-Mart Region 10.  Upon information and belief, Ms. Radtka is eligible for rehire.

26.     Plaintiff Pamela Williams is a female resident of Hillsborough County, Florida. She was employed by Wal-Mart from 2000 through 2003, and worked during that period

in Store 0725 which is in Wal-Mart Region 10.  Upon information and belief, Ms. Williams is eligible for rehire.

27.    Plaintiff Jane Hatten is a female resident of Sarasota County, Florida. She was employed by Wal-Mart from 1990 through 2001, and worked during that period in Stores 769 and 1004, both of which are in Wal-Mart Region 10.  Upon information and belief, Ms. Hatten is eligible for rehire.

28.    Plaintiff Lisa Rohdy is a female resident of Brevard County, Florida. She was employed by Wal-Mart from 1991 through 2002, and worked during that period in Store 0771 which is in Wal-Mart Region 10.  Upon information and belief, Ms. Rohdy is eligible for rehire.

29.    Plaintiff Kimberly Sparks is a female resident of Glades County, Florida. She was employed by Wal-Mart from 2000 through 2005, and worked during that period in Store 2484 which is in Wal-Mart Region 10.  Upon information and belief, Ms. Sparks is eligible for rehire.

30.    Plaintiff Tina Powell is a female resident of St. Clair County, Illinois. She was employed by Wal-Mart from 2000 through 2012, and again from 2008 through the present, and has worked during this time in Stores 1436 and 1541, both of which are in Wal-Mart Region 10.  Ms. Powell is a current employee of Wal-Mart.

31.    Plaintiff Linda Medlin is a female resident of Lake County, Florida. She was employed by Wal-Mart from 1991 through 2010, and worked during that period in Stores 1541 and 1436 all are in Wal-Mart Region 10 and Store 800 is in Region 46. Upon information and belief, Ms. Medlin is eligible for rehire.

32.     Plaintiff Teresa Rainey is a female resident of Palm Beach County, Florida. She was employed by Wal-Mart from 2001 through 2005, and worked during that period in Store 1398, which is in Wal-Mart Region 10.   Upon information and belief, Ms. Rainey is eligible for rehire.

33.     Tanisha Williams is a female resident of Orange County, Florida. She was employed in Wal-Mart Region 46. Upon information and belief, Ms. Williams is eligible for rehire.

34.     Kimberly P. Roberts is a female resident of Knox County, Tennessee. She was employed in Wal-Mart Region 46. Upon information and belief, Ms. Roberts is eligible for rehire.

35.     Plaintiff Gretchen Adams is a female resident of Osceola County, Florida. She was employed by Wal-Mart from 1993 through 2001, in Stillwater, Oklahoma, Cape Coral, Florida, Jasper, Alabama, Winston-Salem, North Carolina, Las Vegas, Nevada, as well as Greenacres, Florida, Store 1436, and Titusville, Florida Store 649, both of which are in Wal-Mart Region 10.   Upon information and belief, Ms. Adams is eligible for rehire.

36.     Plaintiff Iris Marchard is a female resident of Broward County, Florida. She was employed by Wal-Mart from 2001 through 2011, and worked during that period in Store 2963, which is in Wal-Mart Region 10.   Upon information and belief, Ms. Marchard is eligible for rehire.

37.     Plaintiff Yolanda Borras is a female resident of Osceola County, Florida. She was employed by Wal-Mart from 2003 through 2004, and worked during that period in

Store 0890, which is in Wal-Mart Region 10.   Upon information and belief, Ms. Borras is eligible for rehire.

38.   Plaintiff Lisa Youman is a female resident of Leon County, Florida. She was employed by Wal-Mart from 1987 through 2003, and worked during that period in Store 1408, which is in Wal-Mart Region 46.   Upon information and belief, Ms. Youman is eligible for rehire.

39.   Plaintiff Kathleen Gravedoni is a female resident of Escambia County, Florida. She was employed by Wal-Mart from 20001 through the present, and has worked during this time in Stores 2920 (Orange Park, FL) and 1224 (Pensacola, FL), both of which are in Wal-Mart Region 46.  Ms. Gravedoni is a current employee of Wal-Mart.

40.   Plaintiff Betty Moore is a female resident of Union County, Florida. She was employed by Wal-Mart from 2005 through 2010, and worked during that period in Store 1283, which is in Wal-Mart Region 46.   Upon information and belief, Ms. Moore is eligible for rehire.

41.   Plaintiff Rhonda Waters is a female resident of Duval County, Florida. She was employed by Wal-Mart from June 2006 to December 2007 in Store 3309, which is in Wal-Mart Region 46. Upon information and belief, Ms. Waters is eligible for rehire.

42.   Plaintiff Laura Parsons is a female resident of Richmond County, New York. She was employed by Wal-Mart intermittently from 1995 through 2004, and worked during that period in Store 1182, which is in Wal-Mart Region 46.   Upon information and belief, Ms. Parsons is eligible for rehire.

43.   Plaintiff Ann Mowrey is a female resident of Marion County, Florida. She was employed by Wal-Mart from 2002 through 2010, and worked during that period in

Store 1182, 0960, both of which are in Wal-Mart Region 46, and Store 1964 in Westerly, RI.  Upon information and belief, Ms. Mowrey is eligible for rehire.

44.     Plaintiff Teresa Evans Cluff is a female resident of Duval County, Florida. She was employed by Wal-Mart from 2000 through 2004, and worked during that period in Store 1083, which is in Wal-Mart Region 46.  Upon information and belief, Ms. Cluff is eligible for rehire.

45.     Plaintiff Tonya Colson is a female resident of Crisp County, Georgia. She was employed by Wal-Mart from 1988 through 2003, and worked during that period in Store 1006, which is in Wal-Mart Region 46.  Upon information and belief, Ms. Colson is eligible for rehire.

46.     Plaintiff Sherry Hue is a female resident of Duval County, Florida. She has been employed by Wal-Mart since 1984 in Store 489 in Louisiana, Store 908, in Orlando, FL, which is in Region 10, and Store 1083, in 1993, which is in Wal-Mart Region 46, where she currently works.  Ms. Hue is a current employee.

47.     Plaintiff Jamie Estevez is a female resident of Alachua County, Florida. She was employed by Wal-Mart from 1995 through 2009, and worked during that period in Store 1297, which is in Wal-Mart Region 46.  Upon information and belief, Ms. Estevez is eligible for rehire.

48.     Plaintiff Vanessa McKever is a female resident of Duval County, Florida. She has been employed by Wal-Mart since 2005 in Store 1083, which is in Wal-Mart Region 46.  Ms. McKever is a current employee.

49.     Plaintiff Valarie Blackshear is a female resident of Duval County, Florida. She was employed by Wal-Mart from 2000 through 2011, and worked during that period in

Store 1219, which is in Wal-Mart Region 46. Upon information and belief, Ms. Blackshear is eligible for rehire.

50. Plaintiff Anne Mantello is a female resident of Volusia County, Florida. She has been employed with Wal-Mart since 1984 in Store 613, which is in Wal-Mart Region 46. Ms. Mantello is a current employee.

51. Plaintiff Korby Miller is a female resident of Clark County, Nevada. She was employed by Wal-Mart from 2000 to 2006 and worked during that period from 2000 to 2002 in Mesa, AZ, from May 2002 through April 2004 in 8130, which is in Wal-Mart Region 6, and then after that in Ft. Myers Store, and transferring to Store 6382 in Las Vegas from 2005 through 2005. Upon information and belief, Ms. Miller is eligible for rehire.

52. Plaintiff Maggie Gibbs is a female resident of Hillsborough County, Florida. She was employed by Wal-Mart from 1992 through 2012 and worked during that period in Stores 1004, from 1992 to 1994, and then in Store 1203 in Wimauma, FL from 1994 through 1997, and then to Store 0769 in Venice, FL from 1997 to 1998, and then Sam's Club 6341, in Sunrise, FL from 1998 to 1999, which is in Wal-Mart Region 6. Subsequently, she worked in Region 10, Store 1004 in Bradenton, FL from 1999 through 2011. Upon information and belief, Ms. Miller is eligible for rehire.

53. Defendant Wal-Mart Stores, Inc., is a Delaware corporation with stores throughout Florida. Its corporate headquarters is located in Bentonville, Arkansas. In Florida, Wal-Mart operates retail stores doing business as Wal-Mart Discount Stores, Wal-Mart Supercenters, and Sam's Clubs.

54.    Wal-Mart currently operates 293 Wal-Mart stores and Sam's Clubs in Florida where it employs more than 94,000 workers.

55.    Wal-Mart's operations are divided into regions.

56.    During the time relevant to the Plaintiffs herein, there were a total of 41 regions: 35 Wal-Mart regions and six Sam's Club regions.

57.    The three regions at issue in this case, all falling within the Southeastern United States, consist of:

    a.    Wal-Mart Region 10—approximately 88 Wal-Mart retail stores located in Florida; and

    b.    Wal-Mart Region 46—approximately 70 Wal-Mart retail stores, mostly located in Florida, as well as Georgia and South Carolina; and

    c.    Sam's Club Region 6—one of only 6 Sam's Club regions in the United States, consisting of approximately 77 Sam's Club retail stores, mostly located in Florida, as well as Georgia, South Carolina, North Carolina, Alabama, Tennessee, and Virginia.

58.    Plaintiffs Busalacchi, Koferl, Simmons, Johnson, Jacobson, Hern, Hicks, Radtka, Williams, Hatten, Rohdy, Sparks, Medlin, Gibbs, Rainey, Adams, Marchand, and Borras worked for Wal-Mart in Region 10. Plainitffs Powell remain employed in Region 10 .

59.    Plaintiffs Youman, Moore, Parsons, Mowrey, Waters, Cluff, Colson, Estevez, and Blackshear worked for Wal-Mart in Region 46. Plainitffs Estevez, Gravedoni, Mantello, and Hue remain employed at Region 46.

60.    Plaintiffs Miller, and Gibbs worked for Wal-Mart at the Sam's Club Region 6.

61.     Plaintiffs contend that in both Wal-Mart Region 10 and 46 and Sam's Club Region 6, Wal-Mart maintained a pattern or practice of gender discrimination in compensation and promotion. While Plaintiffs bring their claims individually, the evidence that Wal-Mart engaged in a pattern of discrimination in compensation and promotion is relevant evidence that may be used by each individual plaintiff to support her assertion that Wal-Mart's actions with respect to her own pay and promotion were driven by gender discrimination. And, in each of the above Regions, the compensation and promotion policies and practices of Wal-Mart had a disparate impact, not justified by business necessity, on female employees including the Plaintiffs.

## FACTUAL ALLEGATIONS

### Organizational and Store Structures: Common Threads

62.     *Store Formats*—Within Wal-Mart Region 10 and Wal-Mart Region 46, Wal-Mart has operated in these primary formats—Wal-Mart Discount Stores and Wal-Mart Supercenters. Within Sam's Club Region 6, Wal-Mart has operated in only one format—Sam's Clubs. The basic organizational structure for the retail stores within each Region has been the same throughout the Region.

63.     *Common Hourly Jobs Within Stores*—The stores within each Region use common job titles and job descriptions, and the same job hierarchies, throughout the Region.

64.     *Most Common Positions*—While there are numerous job titles at Wal-Mart, the majority of hourly employees have worked as sales workers, cashiers, department managers and stockers. The most common management position is assistant manager.

65.   *Common Department Structure*—Stores within each Region have been divided into numerous departments, which are staffed by hourly paid employees. Some departments have been designated as specialty departments. In each Region, the departmental structure in the stores is the same throughout the Region.

66.   *Common Management Jobs*—With the exception of Support Manager, management positions within each Region are salaried. Within each Region, each store has Assistant Managers, while larger stores have had one or more Co-Managers who supervise Assistant Managers and other staff. All stores have Store Managers who are in charge of the store. Specialty department managers, who report to Store Managers, also report to District and Regional Specialty Managers above the store level.

67.   *District Organization*—Stores within each Region are grouped into districts consisting of at least six stores that are supervised by District Managers.

68.   *District Manager's Role*—Within each Region, District Managers are responsible for ensuring store compliance with company policies and culture. District Managers are based in their districts and spend their time visiting and monitoring the stores in their districts and reviewing all facets of the store operations. District Managers also have authority to make or approve compensation and promotion decisions for hourly employees in the stores within their district.

69.   *Regional Organization*—Each Region consists of multiple districts that are headed by a Regional Vice President. Wal-Mart Region 10 consists of approximately 15 districts; Wal-Mart Region 46 consists of approximately 11 districts; and Sam's Club Region 6 consists of approximately 11 districts.

70.  *Role of Regional Vice President*—The Regional Vice President of each Region monitors and implements corporate and regional policies regarding compensation and promotion, and makes decisions regarding the pay and promotion of employees working within the Region.  The women here in Regions 10, 46, and 6 were subject to policies for pay and promotion monitored and implemented by a single Regional Vice President for each of their regions.

71.  Upon information and belief, certain policies regarding pay and promotion implemented by the Regional Vice President of each region were established at a corporate level, in Bentonville, AK, and applied consistently within each Region, thus subjecting each of the women in the three Regions to similar policies and procedures, at issue herein, regardless as to regional situation.

72.  In each Region, the Regional Vice President regularly meets with District Managers and receives weekly reports from District Managers about the activities in the Region stores they supervise. Each Regional Vice President is charged with the ultimate responsibility to ensure that personnel decisions in his Region are made in a consistent and lawful manner and has the authority to direct changes to personnel decisions.

73.  *Regional Personnel Manager's Role*—Each Region has a Regional Personnel Manager, who assists the Regional Vice President and District Managers in making pay and promotion decisions for employees working within the Region's stores.

74.  *Divisional Organization*—Each Regional Vice President reports to a Divisional Senior Vice President, and upon information and belief, that position is located at corporate, in Bentonville, Arkansas.

75.     *Management Team*—Each Region has a "Management Team" consisting of the District Managers, Regional Vice President, and Regional Personnel Manager that provides direction, oversight, and approval of pay and promotion practices at the stores within the Region.

76.     Upon information and belief, the Regional Vice Presidents of Regions 10 and 46 reported to the same Divisional Senior Vice President, who had oversight and approval on certain decisions of pay and promotion, at issue herein. Upon information and belief, the Regional Vice Presidents of Regions 6 reported to a Divisional Senior Vice President, who had oversight and approval on certain decisions of pay and promotion, at issue herein. Upon information and belief, all Divisional Senior Vice Presidents were based out of Bentonville, Arkansas and implemented corporate policies from Bentonville, Arkansas

**Compensation Discrimination Within the Regions**

77.     *Common Compensation Policies*—Within each Region, compensation of store-based employees has been set based upon a common set of guidelines from the Management Team that are applied consistently throughout the Region and establish basic standards for setting pay rates at hire and subsequent pay adjustments of hourly and salaried employees, hereby referred to as Pay Guidelines.

78.     *Hourly Job Classes*—Within each Region, all hourly positions have been grouped into various job classes, later called "pay groups," which are uniform throughout the Region. All employees with the same job title were placed in the same job category until 2004, when pay group varied by department as well as job title.

79. *Job Class Pay Rates*—Within each Region, the minimum pay levels at hire ("start rates") for each job class have been established for each store with the approval of the Management Team. Thereafter, an employee's pay level may be adjusted: 1) after an initial probationary period; 2) if the employee is promoted to a higher job class or into management; 3) on an annual basis if the employee satisfies minimum performance standards; or 4) if the employee has been awarded a special "merit" raise. Many applicants are interested in multiple positions, to maximize their chance of being hired. The Store Manager's decision as to what position to offer an applicant at hire establishes the minimum pay level that may be offered.

80. *Process for Setting Hourly Pay*—Within each Region, the Store Manager of each retail store has the initial responsibility to set pay rates for that store's individual hourly employees within the pay guidelines, subject to a number of constraints set by the Management Team. When a Store Manager sets a pay rate above or below the guidelines, the rate is called an "exception" and is subject to the approval of the Management Team.

81. *Hourly Pay Exceptions*—The pay rate for a new employee may be set up to a maximum of $2 per hour above the start rate, but if the new employee's rate is more than 6% above the established start rate for that pay class, then, as late as 2002, the District Manager was required to approve the rate. In virtually every store in each Region, a significant proportion of employees have been paid 6% or more above the start rate.

82. *Approval of Exceptions*—In each Region, hourly pay exceptions are automatically reported to the District Manager who must then approve or disapprove each

exception. The Management Team is also informed of hourly pay exceptions and is required by Wal-Mart policy to ensure that hourly compensation is consistent among employees throughout the Region.

83.     *Hourly Pay Reports and Audits*—Within each Region, the District Managers, Regional Personnel Managers, and Regional Vice President regularly receive reports of all employees whose hourly pay in a job category is more than 10% below or 5% above the average pay in that class. The District Managers also perform quarterly audits of each store's compliance with company policies, including compensation policies, which are reported to Regional Personnel Managers and Regional Vice Presidents. These managers therefore had knowledge of the compensation discrimination present in the stores over which they had authority.

84.     The Management Team for each Region has the ultimate authority whether, and by how much, to adjust the pay of all hourly employees, including those who are listed on exception reports, and exerts ultimate control over the pay and promotion decisions in the particular stores of each Region. The Management Team of each Region has subjected the Plaintiffs employed in the stores of that Region to a common mode of exercising discretion, which was overseen by a Senior Vice President for Regions 46 and 10 and another Senior Vice President for Region 6, both in Corporate Bentonville, Arkansas.

85.     *Adverse Impact of Post-2004 Pay Restructuring* — From 1998 through June 2004, Wal-Mart assigned jobs to five job classes, the top two of which were only used for a few specialty jobs.  Jobs were assigned to the same class regardless of department. Each successive job class had a higher minimum starting pay rate.  In 2004, Wal-Mart

introduced a new pay structure, in which many jobs which had previously been in the same pay class were assigned to separate classes, and job titles which had previously been considered one job regardless of department, were assigned to different pay classes depending on department.  Pay rates differed depending on the pay class in which an hourly employee worked, and therefore the department in which that hourly employee worked.    The proportion of women in Wal-Mart's departments varied greatly.  Many jobs in departments in which women were over-represented were assigned to lower job classes, while those same job titles in departments over-represented by men were assigned to higher job classes.  Wal-Mart's 2004 pay restructuring had an adverse impact on female employees, including Plaintiffs, and was not justified by business necessity.

86.     Starting in 2005, Wal-Mart changed how starting pay was established for hourly employees.  A corporate policy determined how many credits could be awarded based upon past experience, but only within the five (5) years prior to hire.  Credits were worth different amounts, and available to a different degree for jobs in different job classes.  Thus, the assignment of jobs to job classes, which had a disparate impact on women compared to the prior system of job classes, and the store manager decision about which job to assign an individual to, combined to determine starting pay, pursuant to a formula that had an adverse impact on women, including Plaintiffs.

87.     In 2006, Wal-Mart added a cap on the pay permitted for each job class, further impacting the pay of women relegated to the lower job classes, which had lower pay caps.  This also had an adverse impact on female employees, including Plaintiffs.

88.   *Salaried Pay Guidelines*—Within each Region, salaried employee compensation is required to be made in accordance with pay guidelines for each salaried position.

89.   *Assistant Manager Salary*—In each Region, Assistant Manager pay is derived by a formula set forth in the policy, with exceptions determined by Regional Personnel Managers.

90.   The pay for Assistant Managers who were external hires into the MIT program was also linked to their rate of pay while in the MIT program, but as described above, their MIT pay provided for higher compensation than for internal candidates.  Any exceptions to these formulaic rules required approval of the RPM, with input by the Senior Vice President, if necessary.

91.   This formulaic use of prior pay rates to set starting Assistant Manager pay meant prior pay disparities adverse to women would be perpetuated.  And the use of exceptions, all ruled on by a single individual RPM (with input by the Senior Vice President, if necessary) provided the opportunity to create additional disparities adverse to women.

92.   Assistant Managers also received performance evaluations and associated performance pay increases each year, all on the same date.  These were prepared by the Store Manager and District Manager, which were then reviewed and approved by the RVP (with input by the Senior Vice President).  These performance increases were computed as a percentage of the base pay rate, perpetuating prior disparities in pay.  Performance ratings, all approved by the RVP, could incorporate bias and unfairly rate women Assistant Managers lower than their peers.

93.   In addition to performance increases, Assistant Managers could receive merit increases from 2002 to 2006, which had to be approved by the District Manager and RPM.  These merit increases were computed as a percentage of the base pay rate, perpetuating prior disparities in pay.  And they provided an opportunity for these decisionmakers to exercise bias in choosing whom to favor with these discretionary pay increases.

94.   *Co-Manager Compensation*—In each Region, Co-Manager compensation is comprised of a base salary and profit sharing tied to the profitability of the Co-Manager's store. Regional Vice Presidents determine base salary and assign the stores at which Co-Managers work, the profitability of which affects the profit-sharing component of the compensation they receive. Women, including Plaintiffs, have been assigned to stores that generate lower profits, and as a result were paid less than their male counterparts.

95.   *Pay Decisions Not Job Related Or Documented*—In each Region, Managers are not required to use job related criteria such as job performance or experience in setting, adjusting, or approving compensation for individual employees. The managers within a Region do not document the reason for setting, adjusting or approving the compensation of individual employees. The Management Team of each Region does not hold the managers in the Region accountable for the factors they use in making pay decisions or in ensuring those factors comport with the law, nor do they require any documentation of the reasons for the compensation paid to individual employees. Nor do the managers within a Region specify the weight that should be accorded any requirement for setting or adjusting compensation.

96.     *Patterns in Compensation*—In each Region, women who hold salaried and hourly positions have been regularly paid less on average than similarly-situated men, although on average the women have more seniority and higher performance ratings than the men. This gender pay difference adverse to women exists in the vast majority of the stores of each Region, even when nondiscriminatory objective factors, such as seniority, performance, store location and other factors are taken into account. A statistical analysis of this gender discrimination revealed the impact of these policies and practices within each Region:

    a.  Wal-Mart Region 10—85-90% of stores show disparate pay that is lower for women as compared to similarly situated men;

    b.  Wal-Mart Region 46—87-92% of stores show disparate pay that is lower for women as compared to similarly situated men;

    c.  Sam's Club Region 6—72-83% of stores show disparate pay that is lower for women as compared to similarly situated men.

97.     *Management Knowledge of Compensation Discrimination*—In each Region, the Management Team receives regular reports about compensation for hourly and salaried employees within the Region showing that female employees were paid less than men on average. Here, the Plaintiffs were affected by that discriminatory pay system.

98.     *Adverse Impact of Compensation System*–Wal-Mart's compensation policies, including its failure to require managers to base pay decisions for individual employees on job related criteria such as experience or documented performance, its policy of setting pay adjustments based on the associate's prior pay, and its 2004 pay

class restructuring, have had an adverse impact upon its female employees in each Region including the Plaintiffs. These policies have resulted in a disparate impact on women including the Plaintiffs. The disparate impact is not justified by business necessity.

**Promotion Discrimination Within The Regions**

99.     *Hourly Positions*—Subsequent to 2004, hourly positions were divided into an increased number of separate job classes or pay groups, each with its own pay range. At that time, movement from an hourly position in a lower pay group to an hourly position in a higher pay group became one of the significant avenues to increase compensation.

100.    *Management Track Positions Below Assistant Manager Positions*— Within Wal-Mart Region 10 and Wal-Mart Region 46, Support Managers are the highest level hourly supervisory positions and assume the duties of Assistant Managers in their absence. Within Sam's Club Region 6, Area Managers are the highest level hourly supervisory positions and assume the duties of Assistant Managers in their absence. Employees in the position of Support Manager or Area Manager are often groomed for further advancement. In Wal-Mart Regions 10 and 46, the vast majority of vacancies for the position of Support Manager were not posted prior to 2003, and there was no formal application process for selection for this position or any job related criteria for making selections of those to be promoted to the position of Support Manager prior to 2005.  In Sam's Club Regions 6, the vast majority of vacancies for the position of Area Manager were not posted prior to at least 2003, and there was no formal application process for selection for this position or any job related criteria for

making selections of those to be promoted to the position of Area Manager prior to 2005.

101.    *Promotion to Management Trainee*—Within each Region, including those Regions at issue in this action, entry into the Management Trainee Program is a requirement for advancement into Assistant Manager and other salaried management positions. Prior to 2003, there was no application process or job posting for Management Trainee positions. Throughout each Region, hourly employees were not provided any information regarding how to enter management, what the requirements or qualifications were for entering management, or how to apply for the Management Trainee Program.

102.    *Criteria for Promotion to Management Trainee*—Within each Region, District Managers, assisted by Regional Personnel Managers, select management trainees based upon uniform guidelines setting minimal eligibility criteria for promotion into the Management Trainee Program, including: minimum tenure; age (18 years or older); absence of current "active" discipline; satisfactory recent performance evaluation; and willingness to relocate. They are not, however, provided with any job related criteria for making selections among those who meet the minimum criteria. Within each Region, subject to very limited exceptions that must be approved by the Regional Personnel Manager and Regional Vice President, an employee selected into the Management Training program is required to transfer from his or her store, and often his or her district, upon entering training and upon assuming an Assistant Manager position.

103. *Promotion to Co-Manager*—Within each Region, Regional Vice Presidents select Co-Managers subject to approval by the Divisional Senior Vice President. The majority of Co-Manager promotions are transfers across district lines. Co-Manager openings have rarely been posted and there has been no formal application process for such positions. While there have been minimal eligibility requirements for promotion to Co-Manager, such as satisfactory performance and willingness to relocate, there are no job related criteria for making selections among those who meet the minimum criteria or for determining which store to assign to a Co-Manager.

104. Within each Region, the promotional policies and practices regarding management-track positions have denied interested and qualified females equal access to promotional opportunities because promotion opportunities are not posted, there is not an open application system, and employees are not informed of the criteria for promotion. Moreover, within each Region, managers fail to require or use valid, job-related factors in making the promotion selections within the Region. Nor does Wal-Mart specify the weight that should be accorded any requirements for promotion, provide for detailed objective criteria for the selection of employees for promotion, or monitor the policies and practices used in each Region for the selection of employees for promotion. As a consequence, qualified women, including the Plaintiffs herein, in each Region have been denied equal access to promotions because of their gender.

105. *Management Trainee Registration of Interest*—In January 2003, Wal-Mart instituted within each Region an online application process for entry into the Management Training Program. In order to be considered as an applicant, employees were required to agree to a set of conditions, many of which had the purpose and effect of

discouraging women from seeking management positions. Potential applicants for entry level store management positions were required to accept the conditions that, as Assistant Managers, they would: travel for up to six weeks in duration; be subject to a varied and irregular schedule, including working on scheduled days off and working during days, overnights, weekends, and holidays; have scheduled days off that were not consecutive and were rotated weekly; and have scheduled hours that could be changed or increased without notice. None of these requirements is justified by business necessity in any of the Regions, and it is untrue that Assistant Managers in any of the Regions must normally travel up to six weeks. But failure of an employee to accept all of these conditions precluded that employee's consideration as an applicant for a management position, which has resulted in the exclusion of interested and qualified women in each Region from the management training program.

106. *No Documentation of Promotion Decisions*—The managers in each Region have failed to document, and Wal-Mart has not tracked, the reason for selecting a particular employee for a management promotion. The managers in each region have failed to document, and Wal-Mart has not tracked, which employees have been denied consideration for promotion because of their inability to comply with the relocation, travel, or scheduling requirements for promotion.

107. *External Statistics*—In each Region, Wal-Mart has had a significantly lower percentage of female managers than its largest competitors.

108. *Internal Statistics on Promotion Rates*—Female employees in each Region, and in each district within each Region, have been much less likely than their male counterparts to receive promotion to management track positions, including Support

Manager (Wal-Mart Regions), Area Manager (Sam's Club Region), Management Trainee, Assistant Manager, and Co-Manager, despite the fact that they possess equal or better qualifications than their male counterparts.

109. *Internal Statistics on Time to Promotion*— Female employees in each Region, and in each district within each Region, must wait significantly longer to be promoted into management track positions than men with equal or lesser qualifications.

110. *Management Knowledge of Promotion Discrimination*—Wal-Mart management has long known about gender disparities in promotion in each of the Regions and has failed to take any remedial action.

111. *Reporting by Gender*—Every store and district within each Region regularly compiles and reports to corporate headquarters the gender composition of its hourly and managerial workforce, employee turnover, exceptions to promotion policies, job posting data, entry into management training programs, and other data. The District Managers, Regional Personnel Managers, and Regional Vice President for each Region receive these reports.

112. *People Division Reports*—Wal-Mart's People Division regularly prepares reports for senior management summarizing promotion and incumbency rates for store management positions by gender, and reports are regularly made to the Board of Directors.

113. *Store Visits*—Within each Region, District Managers, Regional Personnel Managers, and the Regional Vice President regularly visit stores and are aware of the gender composition of the workforce.

114. *Warnings About Discrimination*—Senior management officials, senior People Division officials, and/or outside consultants have warned Wal-Mart that women in each Region are not sufficiently represented in management positions, that women in each Region are paid less than male employees in the same jobs, and that Wal-Mart lags behind its competitors in the promotion of women to management positions in each Region.

115. *Discriminatory Practices Identified*—These officials and/or consultants have also identified policies and practices at Wal-Mart that have an adverse impact on its female employees in each Region, including lack of consistent job posting; the requirement of relocation as a condition of entry into and promotion through management; reliance on stereotypes in making pay and promotion decisions; lack of objective criteria for making promotion decisions; and lack of consistent and reliable scheduling for management level employees.

116. *Relocation Unnecessary*—Wal-Mart's founder, Sam Walton, conceded in 1992 that Wal-Mart's policies, particularly its relocation requirement, were an unnecessary barrier to female advancement, yet this policy remained in place thereafter.

117. *Changes Blocked*—Senior managers also blocked policy changes, such as the posting of managerial vacancies, that would have reduced the impact of Wal-Mart's discriminatory policies within each Region.

118. *Failure to Analyze*—Wal-Mart had never studied nor analyzed whether any of its practices were consistent with business necessity or whether less discriminatory alternatives to these policies and practices could be adopted in each Region.

119.   *Adverse Impact of Promotion Policies*—Wal-Mart's promotion policies, including its failure to require managers to base promotion decisions for individual employees on job related criteria, have had a statistically significant adverse impact upon its female employees in each of the Regions, including the Plaintiffs. Because reasons for promotion decisions are not documented, and Wal-Mart does not create or maintain records that identify the impact of separate components of its promotion policies and practices, its promotion decision-making process is not capable of separation for analysis.

**Wal-Mart Managers Create Corporate Culture of Bias Based on Gender Stereotypes**

120.   In the absence of job-related compensation and promotion criteria, Wal-Mart's managers rely on discriminatory stereotypes and biased views about women in making pay and promotion decisions within each Region.

121.   A 1998 survey of Wal-Mart managers revealed that there was a "good ole boy philosophy" at Wal-Mart, that many managers were "close minded" about diversity in the workplace, and that some District Managers "don't seem personally comfortable with women in leadership roles."

122.   A committee of Wal-Mart's few female executives, disbanded before this action was filed, noted that "stereotypes limit the opportunities offered to women."

123.   Within each Region, all Wal-Mart Store Managers have been required to attend training programs at the company's Walton Institute. These managers were advised at the Institute that the reason there are few senior female managers at Wal-Mart is because men were "more aggressive in achieving those levels of responsibility" than

women. Managers were cautioned that efforts to promote women could lead to the selection of less qualified women over more qualified men.

124.    On or about January 24, 2004, at a meeting of all Wal-Mart's District Managers presided over by Wal-Mart Stores' CEO Thomas Coughlin, the District Managers were told that they were the key to running the stores: "[y]ou are the culture." The key to success was described as "single focus to get the job done. . . . women tend to be better at information processing. Men are better at focus single objective." The District Managers were instructed to create a "culture of execution" and a "culture of results" as they picked "[f]uture leaders."

125.    This corporate culture of discrimination based upon gender stereotypes is manifest in each Region:

a.    Between 1998 and 1999, at Store # 0931 in Wal-Mart Region 10, a female employee was discouraged by her department manager from applying for a position in the electronics department because "electronics is a man thing and [she] should stick with jewelry." Though she applied anyway, she never heard anything else about the position.

b.    Between 1998 and 2000, at Store # 0771 in Wal-Mart Region 10, a female employee was told by her Manager that she "was not cut out for Assistant Manager because she had children."

c.    Between 1997 and 2000, at Store # 0721 in Wal-Mart Region 10, a female employee was told by her male manager, Cary Grant, that she could never be promoted to Assistant Shop Manager because, "per Patrick Cust, [District Manager,] there will never be a female assistant shop manager or shop manager in

TLE." Manager Grant also made derogatory comments about female employees seeking promotions, saying they could not be promoted because they "Were married . . .and had children" and "their responsibilities were to their home life, not being promoted at Wal-Mart."

d.  Between 1998 and 2001, at Store # 0721 in Wal-Mart Region 10, a female employee was passed over for a promotion to the Cash Office in favor of a male because Wal-Mart needed someone who "could have 24 hour availability," which she did not have "because of her child care responsibilities."

e.  Between 1998 and 2003, at Store # 1536 in Wal-Mart Region 10, Store Manager Max Smith explained that a male employee made at least $1.00 more per hour than a more experienced female employee in the same position because "he's got a family to support." Aside from being discriminatory, this justification was also false because the male employee was a single man with no children and the female employee had a child to support.

f.  Between 1999 and 2003, at Store # 2484 in Wal-Mart Region 10, when a female employee complained to her Support Manager about being paid less than other similarly situated male employees, she was told, "Single mothers like you don't deserve to make as much, you should be in a two income household."

g.  In 2000, at Store # 2727 in Wal-Mart Region 10, a female Assistant Manager was selected for the "rising stars" accelerated management training week-long class. After completing the class, she was eligible for promotion to Co-Manager within 6 months. The males in her week-long class were all promoted within two months, whereas it took her 5 years to gain her promotion to Co-Manager. During

this 5 year period, she watched male Assistant Managers who had not been part of the "rising stars" program be promoted before her.

h.   Between 2000 and 2006, at Store # 0811 in Wal-Mart Region 10, a female employee applied to be the pet department manager, but was told by her male store manager, Jeff Norris, that "a women is not suited for the job."

i.   Around late 2002 in Store # 1957 in Wal-Mart Region 10, Ms. Buscalacchi learned there were twelve vision center managers with the District. The three male vision center managers were making more money than the nine female vision center managers. A male vision center manager was paid approximately $225 more per week than his female predecessor, who had been transferred to a different store within the district. The matter was brought to the attention of the District Manager, who failed to redress the pay disparity.

j.   Between 2002 and 2010, at Store # 1541 in Wal-Mart Region 10, a female employee was told by her store's male Assistant Manager that "men do a better job than women can because they can lift more and work faster." Such comments were frequently made around the store.

k.   Between 2003 and 2007, at Store # 0771 in Wal-Mart Region 10, Assistant Manager Tom Mahoney explained to a female employee that men were awarded promotional transfers over women because "men have families to raise." The Store Manager, Lenny, told the female employee that "sporting goods isn't for women."

l.  Between 2004 and 2006, at Store # 5221 in Wal-Mart Region 10, a female employee was told by Store Manager Rusty Godwin, that "she couldn't do any overnight work because she was too busy being too pretty."

m.  Between 2008 and 2011, at Store # 4260 in Wal-Mart Region 10, a female employee interviewed for the Electronics Department twice, but the position was given to a male both times. She observed that males dominated higher-paying positions in the electronics and sporting goods departments, while females were assigned to lower-paying positions, such as cashier or jewelry department worker.

n.  Between 1998 and 2003, at Sam's Club Store # 6448 in Sam's Club Region 6, a female employee was subjected to sexist comments by male managers, such as those by Receiving Manager Jeff Williams who said "keep women barefoot and pregnant – that is where they belong."

o.  Between 1998 and 2001, at Sam's Club Store # 8216 in Sam's Club Region 6, a female employee was told by her General Manager Chris Udermann that in order to be promoted for a current opening that she needed to follow a "particular format." When the female called the home office to inquire about the "format" she learned the General Manager had lied to her. The promotion was given to a less-qualified male employee who had experience only as a cashier.

p.  Between 2000 and 2005, at Store # 6448 in Sam's Club Region 6, Store Manager James Fargo told a female employee that she was not suitable for particular positions that needed to be filled by "a male because of heavy lifting," and even warned her on one occasion not to lift something because she was a woman.

q. Between 2000 and 2006, at Store # 6218 in Sam's Club Region 6, female employees were often told to clean up after males in the males' stock area, and perform tasks such as dusting, sweeping, and emptying trash because women are "better" at cleaning.

r. In 2001, at Store # 6441 in Sam's Club Region 6, a female employee was required to work alone in the meat department because the male "meat cutters [were] not used to working with women."

s. In 2002, at Sam's Club Store # 8218 in Sam's Club Region 6, a female employee who was filling in as the supervisor in the Tire Department was told by her supervisor, Roy King, that she could not have the position permanently because a woman could not do the job. A man with less seniority and experience was promoted to the position over the female employee.

t. Between 2002 and 2004 at Store # 8130 in Sam's Club Region 6, a female employee observed that all of the "good positions" went to men, while women were assigned to departments such as the bakery and "softlines" like household goods, clothing, health care, and beauty departments, which are typically lower paying positions.

u. Between 1998 and 2002, at Store # 1119 in Wal-Mart Region 46, in light of a policy prohibiting family members from working at the same store, Store Manager Ivan Lnu asked a female employee, "Why don't you quit so I can hire your husband?"

v. In 2000, at Store # 1283 in Wal-Mart Region 46, a female employee with 4 years' experience in the electronics department was told by her Store Manager, Mike

Littleton, that she was passed over for a promotion within the Electronics Department in favor of a male employee with only 3 months' experience because "they needed a man for the position."

w.  Between 2001 and 2008, at Store # 2843 in Wal-Mart Region 46, a female employee was discouraged from applying to the assistant management trainee program by her male store manager, when he made comments such as "oh you don't want to do that because you have to travel a lot, and you don't know what hours you will get, but they will be long hours."

x.  In 2002, at Store # 1847 in Wal-Mart Region 46, a female employee was denied a promotion in favor of a male because, according to the store Co-Manager R.A. Reese, the automotive manager position is "a man's position."  The Store Manager explained that a more "appropriate" position for the female employee would be in cosmetics.

y.  Between 2005 and 2010, at Store # 1283 in Wal-Mart Region 46, a female employee applied for higher paying positions almost every year and was denied every time in favor of male employees with less experience and less education.

126.  Evidence of pay disparities based upon gender discrimination is also manifest in the applicable regions:

a.  Between 1998 and 1999, at store # 0973 in Wal-Mart Region 10, a female employee learned that a male co-worker with less seniority was making $1.00 per hour more for doing the same job.

b.  Around late 2002 in Wal-Mart Region 10, Ms. Busalacchi learned there were twelve vision center managers within the District. The three male vision center

managers were making more money than the nine female vision center managers. A male vision center manager was paid approximately $225 more per week than his female predecessor, who had been transferred to a different store within the district. The matter was brought to the attention of the District Manager, who failed to redress the pay disparity.

c.   Between 2003 and 2005, at Store # 0666 in Wal-Mart Region 10, a female employee with five years' experience was making $6.80 per hour, while males without more experience were making $9 or more per hour for doing the same job. The female employee complained to Store Manager Jeff Johnson who failed to redress the pay disparity.

d.   In 2004, at store # 2387 in Wal-Mart Region 10, the male Team Lead in the Unloading Dock, Chris, admitted that female employees working in an Unloading Dock Position were making $1.00 less per hour than male employees for doing the same job. A female employee brought the matter to management, who failed to redress the pay disparity.

e.   In 2007, at Store # 0859 in Wal-Mart Region 10, a female support manager learned that men with less experience were often paid more than women in the same position.

f.   Every district in Wal-Mart Region 10 shows statistically significant differences in pay in the years 2000 to 2001.

g.   Between 1997 and 2007, at Store # 1283 in Wal-Mart Region 46, a female employee learned that a male co-worker in the same position, but hired one month after her, was given a higher starting hourly wage.  The male co-worker bragged

to her about his higher pay and offered to show her his pay stub.  However, a male manager overheard the conversation and told the male co-worker to "shut up and put it away" rather than redressing the pay disparity.

h.  Between 1998 and 2004, at store # 0613 in Wal-Mart Region 46, a female employee was told by one of her male co-workers, after he saw how much she made, that he made more than she did, even though he had less experience.

i.  Between 1999 and 2000, at Store # 0613 in Wal-Mart Region 46, Edna Remington was promoted to the position of Assistant Manager at a salary of $28,000 per year.  Shortly after the promotion, she learned that a male co-worker was offered $32,500 per year for the same position, even though she had worked at the company for 7 years and he had been there only 6 months.

j.  Between 2005 and 2008, at Store # 1082 in Wal-Mart Region 46, a female employee learned that she was paid less per hour than every man she worked with in the meat department, even though they all had the same job duties and responsibilities.  In fact, a male who was hired one year after her, with less experience, received a higher hourly wage for the same position.  When the female employee complained to the store's female Co-Manager, the Co-Manager acknowledged the pay disparity was unfair, but said she could not change the situation, and explained that even she was making less than her male counterpart Co-Manager at the store.

k.  Between 2006 and 2007, at Store # 3309 in Wal-Mart Region 46, Rhonda Waters found out that men in her department, in her same position but with less experience, were making $10.00 to $11.00 per hour while she was only making

$8.00 to $9.00 per hour.   When she complained to management about the disparity, they failed to redress the disparity, instead telling the female employee to apply for a higher paying position. She applied for higher paying positions, but was never selected.  A male manager warned her not to complain "higher up the chain" or she would be terminated.

l.   Every district in Wal-Mart Region 46 shows statistically significant differences in pay in the years 2000 to 2001.

m.   Between 1998 and 1999, at store # 8214 in Sam's Club Region 6, a female employee working as a Team Leader discovered that a male applicant and female applicant were hired at the same time for the same type of position, but the male was hired at $1.00 more per hour than the female. The Team Leader made a complaint to her male manager, who told her that the man was "worth the extra dollar, and to hold her tongue."

n.   In 2000, at store # 8214 in Sam's Club Region 6, a female employee learned that a male co-worker was earning a dollar more per hour for doing the same job, even though he had less prior experience and had worked for the company for the same amount of time that she had.

o.   Between 2002 and 2004, at Store # 8130 in Sam's Club Region 6, an experienced female Assistant Manager received approximately $6,000 less per year in salary than newly hired male Assistant Managers with no experience. When she raised the pay disparity with one of the male Assistant Managers, he claimed that his job was harder, even though they both had similar duties

p.  Every district in Sam's Club Region 6 shows statistically significant differences in the years 2000 to 2001.

**Wal-Mart's Ineffective Anti-Discrimination Efforts**

127.  Prior to the filing of the Dukes class action, Wal-Mart had no meaningful policies or practices to hold managers accountable, financially or otherwise, to equal employment and diversity policies and goals.

128.  Starting in 2000, Wal-Mart asked District Managers to set diversity "goals" for advancement of women in management. The goals were based on each manager's individual views on what was attainable and were not tied to any objective measures of availability or qualifications. Prior to 2004, failure to meet diversity goals had no financial or other consequence for managers.

129.  As late as 2003, Wal-Mart Stores' CEO Coughlin was not aware of any diversity goals or whether managers had met such goals. Many Store Managers were also unaware of the existence of any diversity goals.

130.  Until at least 2003, there had never been any diversity goals set for individual stores, or for any compensation practices.

**Wal-Mart's General Policy of Gender Discrimination**

131.  At all relevant times herein, and to the best knowledge of Plaintiffs, Wal-Mart engaged in a general policy of gender discrimination in each Region, evidenced by its de facto practice of denying women equal pay for hourly retail store positions, denying women equal pay for salaried management positions up to and including Co-Manager, and denying women equal opportunities for promotion to management

track positions up to and including Store Manager. In each Region, including Region 10 and 6, Wal-Mart accomplished this discrimination by:

a.  engaging in a pattern or practice of making pay and promotion decision on the basis of gender and specifically paying each Plaintiff less than her similarly situated male peers, and denying Plaintiffs promotional opportunities.

   i.  Specifically, each Plaintiff herein has either been denied equal pay for salaried positions or hourly positions.

   ii.  Additionally, each Plaintiff herein has been denied promotional opportunities for the following positions:

      1.  Support Manager/Zone Manager/Position Equivalent

      2.  Management in Training/Assistant Manager/Position Equivalent

      3.  Co-Manager/Position Equivalent

      4.  Store Manager/Position Equivalent

b.  failing to change pay and promotion policies and practices with an adverse impact on its female employees even though those policies and practices were not justified by business necessity and there were less discriminatory alternatives available;

c.  failing to establish and institute effective practices and procedures to insure that its workplace would be free of invidious and illegal gender discrimination;

d.  acting with reckless indifference to the rights of Plaintiffs despite systemic gender discrimination in the equal pay and promotion of its female employees; and

e.  failing to take adequate steps to correct known discriminatory disparities.

## ALLEGATIONS OF PLAINTIFFS

**Region 10**

**Plaintiff Catherine Busalacchi**

132.   Plaintiff Catherine Busalacchi began her employment with Wal-Mart in 1991 and continued until 2005, working in Stores 1635 and 1957.

133.   Prior to joining Wal-Mart, Ms. Buslacchi had a career in real estate, as well as prior management experience at an Optical Store.

134.   Ms. Buslacchi began in an hourly position as an Optician at Store Number 1635 in Waukesha, WI. She then was promoted to a Vision Center Manager, a salaried position, in Sheboygen, WI, transferred to Cape Coral, FL, in 1998 in the same position, and then to Naples, FL Store Number 1951 as Vision Center Manager around 2000.

135.   While at Store 1951, and during her review, Ms. Busalacchi discussed difficulties with finding help to staff her department with her Regional Manager, Tim Gazaway, who told her that she needed to "bring in some men to help and pay them more because they have families." Ms. Busalacchi responded that she had a family, too, and his response was, "well, these are guys we're talking about."

136.   Ms. Busalacchi was so distraught from his supervisor's disregard for women, she opted to step down to an hourly position in the Vision Center to get out from his supervision.

137.   In the hourly role, Ms. Busalacchi was assigned to prepare the Profit and Loss Statements for her region. She learned that every single male in their region was

being paid approximately $200.00 to $300.00 more than their female counterpart, despite the females having greater experience in the majority of circumstances.

138. Ms. Buslacchi separated her employment in 2005.

139. Upon information and belief, Ms. Buslacchi believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Melissa Koferl**

140. Plaintiff Melissa Koferl began her employment with Wal-Mart in 2003 in Store 0987 in Ft. Meyers, FL, and ended in June 2006, in Store 819 in Cape Coral, FL.

141. Ms. Koferl started at Wal-Mart as an Assistant Manager making $28,000.

142. During her employment, she learned that the males in her Management in Training Program were hired in at a salary of $40,000, despite the same or less experience.

143. Upon information and belief, Ms. Koferl believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Cynthia Simmons**

144. Plaintiff Cynthia Simmons began her employment with Wal-Mart in 1998 and worked until 2004 at Store 0941.

145. Prior to joining Wal-Mart, Ms. Simmons earned her Bachelor's Degree in Business.

146. Ms. Simmons was hired into Wal-Mart as an Assistant Manager of the Grocery Department, making approximately $25,000.

147. Subsequently, Ms. Simmons learned that her male counterparts were hired in at rates spanning from $27,500 to $30,000 annually, depending on the hiring manager, and despite their experience.

148.    Despite efforts to progress to a higher role, including Co-Manager, she was never given the opportunity and instead watched as less-qualified males were placed into open roles.

149.    Upon information and belief, Ms. Simmons believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Diane Johnson**

150.    Plaintiff Diane Johnson began employment with Wal-Mart in August 2005 in Store 623 and remained employed until April 2010.

151.    Ms. Johnson joined Wal-Mart with a Bachelor's Degree in Criminal Justice and experience with the Lee County Sheriff's Department as an Overnight Clerk. She also had prior retail experience.

152.    Ms. Johnson worked her way from a Sales Associate in the Grocery Department to Department Manager of Furniture, until her transfer to Store 5034 as an Assistant Manager.

153.    While at Store 5034, Ms. Johnson learned that male Assistant Managers were paid more, despite similar or less experience. They were also given the favorable shifts.

154.    When she found no opportunities for advancement to Co-Manager, she requested a transfer back to Store 623 and took the position of Zone Manager, where she remained until her separation in April 2010.

155.    Upon information and belief, Ms. Johnson believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Catherine Jacobson**

156.    Plaintiff Catherine Jacobson was employed with Wal-Mart from 1987 to 1988, and again from 1988 through 2002.

157.    Ms. Jacobson began employment as a Cashier, worked her way into layaway cashier, then softlines associate, garden center cashier, and office associate/greeter. During employment, expressed aspirations to her Store Manager for upward mobility, including Support Manager. Despite promises that she would be considered, her promotional opportunities never came to fruition.

158.    Instead, in December 2002, and after an injury, she was told by her Store Manager Mike Kelly, that she was costing the store too much money with her injury, and she was terminated.

**Plaintiff Catherine Hern**

159.    Plaintiff Catherine Hern began her employment with Wal-Mart Supercenter 0973 in Fort Pierce, FL in January 2002 as a salaried management trainee. She was employed until July 2002, when she was forced to resign when her manager told her that she would be selected to relocate out of the area if she wanted to continue as an Assistant Manager. Upon information and belief, the four men in her program were permitted to stay in the area. She was denied the opportunity to continue as an Assistant Manager.

160.    During her training in the Management in Training program, she learned that the four men in her program were making approximately $5,000 to $10,000 more than her, despite similar experience.

**Plaintiff Jenny Hicks**

161.    Plaintiff Jenny Hicks was employed in Store 528 between 1995 through 2000.

162.    Ms. Hicks began employment in the position of Jewelry Associate, transferring to

Floor Associate, and then working her way to Department Manager. At the end of her

employment, she held the position of Customer Service Manager (CSM).

163.    While holding the position of Department Manager, Ms. Hicks was regularly asked to

train men from various positions into management positions, though they had no

experience and Ms. Hicks was employed with the company longer.

164.    For instance, Ms. Hicks was asked to train her coworker Charles Morris, who was

previously a Floor Cleaner. Mr. Morris was promoted above Ms. Hicks and given a

raise.

165.    When Ms. Hicks inquired why she was not given similar opportunities for promotion,

including into Support Manager and the Management in Training Program, she was

told by her Co-Manager Eric that she needed more training.

166.    Ms. Hicks watched as the men she trained moved up the ladder. She asked to be

cross-trained in other departments for the opportunity for promotions, but still was

denied opportunities for the Assistant Manger position.

167.    During her employment, Ms. Hicks learned that the men who were below her, and

those she was training, were being paid more than her, despite less experience. When

she complained to her supervisor about this, she was told that the males were

"underpaid." She questioned – if they were underpaid in their subordinate roles,

would that not mean she was underpaid? She never received an adjustment. Instead,

her Co-Manager Eric told her "people of your stature are not in a position to get a raise."

168.   Upon information and belief, Ms. Hicks believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Francine Radtka**

169.   Plaintiff Francine Radtka joined Wal-Mart with a successful, seven-year career as a Deli Manager for Publix. She joined Wal-Mart in 1996 for the position of Deli Manager (Assistant Manager) in the new Supercenter, Store 315, and with aspirations for Co-Manager and subsequent District Manager of the Deli Department.

170.   During employment, Ms. Radtka regularly discussed her desires for promotions with her Store Manager Steve Schultheis, to no avail.

171.   Nonetheless, and during employment, Ms. Radtka learned that her male counterparts were making more than her, despite similar (or less) experience.

172.   Upon information and belief, Ms. Radtka believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Pamela Williams**

173.   Plaintiff Pamela Williams joined Wal-Mart with experience as a manager with GE Capital, and Golf and Tennis Resorts as a manager. Ms. Williams started working at Wal-Mart part-time while continuing a position as an accounting manager with a travel company.

174.   Ms. Williams decided to begin school to get a business degree, and took a part-time position with Wal-Mart in the bakery beginning in 2000 in Haines City, FL, Store 0725. She stayed in this store until her separation in 2003.

175. When Ms. Williams began attending school in the day time, she sought work at night, so she transferred to full-time night employment and was placed in the Cash Office.

176. Ms. Williams expressed interest in the Assistant Manager training program, but was told by Tammy, Assistant Store Manager, that she had to have a two-year college degree for management (Ms. Williams was attending college, but did not have her degree). She was also told that she would have to travel, relocate, and give up her $1.00 pay differential. She was discouraged from seeking the position.

177. Later, when Ms. Williams transferred to the day shift, she was told she would lose her $1.00 differential as company policy. However, she then found out that her male counterpart had been permitted to switch to days and not lose his differential. When she complained, she was told, "that was the deal we made with him."

178. Later, she learned that the same male got a raise, when she did not.  Ms. Williams asked for a raise herself, but was told that her male counterpart had a "family to raise." However, at the time, Ms. Williams was a single mom with more children. She was then told the company "reached their quota for merit raises for the quarter.

179. During Ms. Williams' employment, she sought additional promotions, including Support Manager, but was never given opportunities.

180. Ms. Williams left in 2003 when she realized there were no opportunities at Wal-Mart for women to move up.

181. Upon information and belief, Ms. Williams believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Jane Hatten**

182.  Plaintiff Jane Hatten began employment in 1990 as a Receiving Clerk, working her way to Cash Office, Furniture Department Support Manager, Risk Control Manager, and then Training and Hiring, ending employment after 11 years in 2001.

183.  From the beginning of her employment, Ms. Hatten made her Store Manager, Assistant Manager, and District Manager aware of her desires from promotions, including requests for the Management in Training Program. She was recognized for her hard work with exceptional reviews.

184.  Despite her hard work, she was forced to watch as less experienced males were promoted to the program over her.

185.  Upon information and belief, Ms. Hatten believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Lisa Rohdy**

186.  Plaintiff Lisa Rohdy began employment with Wal-Mart in 1991 and continued for 11 years, until 2002.

187.  During her 11 years of employment, Ms. Rohdy held various titles including Personnel Manager, softlines associate, department manager of housewares, support manager, safety team leader, cashier, CSM, and receiving.

188.  While employed, Ms. Rohdy spoke with her Store manager, Chuck, about her interest in the Management In Training/Assistant Manager program, but was never given the opportunity. Instead, she was told she "was not cut out for the position" because she "had children." She was then told by management that the program "requires

relocation and too much time – because you have children, and they are your priority, this isn't the job for you."

189.   She watched as countless, less-experienced males were promoted to the role.

190.   When she became pregnant, her store manager Chuck stated, "why can't you be like those Vietnamese women who have a baby, drop it, and keep working."

191.   Upon information and belief, Ms. Rohdy believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Kimberly Sparks**

192.   Plaintiff Kimberly Sparks was employed for five years with Wal-Mart, from 2000 through 2005.

193.   As a Customer Service Manager (CSM), Ms. Sparks sought opportunities for promotion, including Support Manager and Manager in Training program.

194.   She was told there were no vacancies available. Nevertheless, a few weeks later a male co-worker was given the job training that she had requested.

195.   During employment, she worked as a customer service manager and later department manager, both paying $10 an hour. She asked to increase her wages through training and overtime, however she was refused the opportunity. After Ms. Sparks left the position of Department Manager of Supporting Goods, she learned that the company hired a male to replace her at a higher wage than what she earned in the position. She was told by management, "we need a man to do this job if we want it done right."

196.   Upon information and belief, Ms. Sparks believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Tina Powell**

197.    Plaintiff Tina Powell is a current employee at Wal-Mart and has been employed since 2008. Previously, she worked between 2000 and 2012 with the Company.

198.    During employment, Ms. Powell discussed desires for promotions with management, but was laughed at. Specifically, when she learned that her male coworker was promoted into a position which had not been advertised, she discussed the position with her supervisors who denied the promotion. Instead, Ms. Powell watched as male coworkers who were hired into the same position as her were promoted into positions like Assistant Manager/Management in Training.

199.    Ms. Powell took and passed the managerial exams and again inquired as to promotional opportunities. She was told there was a position open in TLE if she wanted it. However, upon accepting the position, she learned it was a lateral move.

200.    Initially, Ms. Powell was hired into the TLE Department in 2000 in Store 1436, where she learned that men in the same position were paid more than her, despite similar experience.

201.    Upon information and belief, Ms. Powell believes she is and was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Kathleen Gravedoni**

202.    Plaintiff Kathleen Gravedoni is a current employee of Wal-Mart, employed since 2001, for 17 years.

203.    She joined Wal-Mart with ten (10) years of experience from Winn-Dixie, where she was on track to become an Assistant Store Manager.

204.  Ms. Gravedoni sought employment with Wal-Mart for advancement opportunities that never materialized. During her employment, she sought opportunities to advance, including to Support Manager and Manger in Training, but she was told there were no positions available.

205.  Ms. Gravedoni was eventually interviewed, but found out she was just being interviewed as protocol, but had no real opportunities to progress. She gave up on opportunities for promotion and is now a Cashier.

206.  Upon information and belief, Ms. Gravedoni believes she is and was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Linda Medlin[1]**

207.  Plaintiff Linda Medlin joined Wal-Mart in 1991 with prior retail management experience.

208.  She began in the position of Department Manager of Domestics. She was hired into the position of Department Manager of Domestics, with aspirations for moving up the ladder. However, she found her plans were foiled upon learning that Wal-Mart was a "boys' club."

209.  At hire, she was trained by John Prattenshap, Store Manager, for the position of Assistant Manager, but when Mr. Prattenshap left the company and a new store manager took his place, she never got the opportunity to advance.

210.  Ms. Medlin made complaints to District Manager Steve Mastaller and Mr. Scholar, to no avail, despite the fact that, at that point, she worked in safety loss prevention and

_____
[1] Also worked in Region 46 and asserts claims herein based on work in Region 46.

personnel with the company. Instead, she watched as less qualified males were promoted over her.

211.   During employment, Ms. Medlin learned that the men in her similar position were brought in at higher rates, despite the same experience. She asked for raises, but was denied. She was subjected to regular bragging by her male counterparts that they made more money than her and got raises because "they asked for it." She was not afforded the same benefits.

212.   Upon information and belief, Ms. Medlin believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Teresa Rainey**

213.   Plaintiff Teresa Rainey joined Wal-Mart in 2001 with prior experience as an Assistant Manager at K-Mart and worked her way up from a part time sales associate to Assistant Manager, with goals to progress further. Yet, despite her attempts for a Co-Manager position and multiple applications, including experience and interviews with supervisors, like District Manager Steve Mastaller and the District Manager after him, she watched as she was passed over for less qualified males.

214.   Upon information and belief, Ms. Rainey believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Gretchen Adams**

215.   Plaintiff Gretchen Adams joined Wal-Mart with the benefit of years of experience in her family oil business and her own business ownership, as a former Director of Education for a trade school, as well as restaurant and hotel sales experience.

216.   During the duration of Ms. Adams eight (8) year employment, she helped Wal-Mart to open twenty-seven (27) Supercenter stores. Ms. Adams began in a Support Manager position in Oklahoma, continued with employment in Jasper, Alabama, and relocated to work for the company in Cape Coral, Florida in 1994, continuing through 2001 with positions in Florida while pursuing upper management.

217.   Ms. Adams expressed interest in advancement with her Store Manager, Jim Lett, who told her that District Manager, Powell Wallace, did not like women in management. Yet, Ms. Adams pressed on, speaking with Mr. Wallace on numerous occasions about opportunities for promotion. Instead, she was told she needed more training. She asked to be placed into the Assistant Manager position to get the training and spoke with the Head of Personnel, Mr. Patrick, about her desires, to no avail.

218.   Ms. Adams continued to press forward for promotional opportunities all the way until her separation in 2001, when she resigned due to lack of promotional opportunities.

219.   Upon information and belief, Ms. Adams believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Iris Marchard**

220.   Plaintiff Iris Marchard began her 10 year employment with Wal-Mart in 2000 as a Sales Associate and worked her way up to Jewelry Coordinator, where she remained for the majority of her employment, which lasted until 2011.

221.   During employment, she expressed desire for upward mobility and even passed management tests, but was never given the opportunities to progress. Instead, she was told by management that they "needed" her to stay in the position she was in.

222.    Upon information and belief, Ms. Marchard believes she was paid less than other similarly situated men during her employment within Region 10.

**Plaintiff Yolanda Borras**

223.    Plaintiff Yolanda Borras was employed with Wal-Mart between 2003 and 2004.

224.    Ms. Borras joined Wal-Mart with a Bachelor's Degree in Business Administration and experience as an Office Clerk and Medical Secretary. She was employed between January 2003 and December 2004 as an Associate in the Bakery, where she remained during her entire employment. While employed, she sought opportunities to advance to Support Manager and Assistant Manager, but was told she was not qualified. However, she watched as less qualified males were promoted over her, including those without a degree.

225.    Upon information and belief, Ms. Borras believes she was paid less than other similarly situated men during her employment within Region 10.

<u>Region 46</u>

<u>Tanisha Williams</u>

226.    Tanisha Williams was employed from 1997 to 2007 in Store Number 0800.

227.    Ms. Williams began employment in the position of cashier and eventually sought a promotion to Department Manager.

228.    After waiting eight (8) months, Ms. Williams was then promoted to the position of Department Manager of Infants and Head Inventory of Stock.

229.    While in this position, she learned that men who she trained were making more than her in the same hourly positions, despite her having more experience and longer employment.

230. During employment, she expressed interest in an Assistant Manager position and discussed her desire for a promotion with Store Manager Jim Liard.

231. Mr. Liard ignored her requests.

232. Eventually, after Ms. Williams continued to prompt about a promotion, Mr. Liard told her that she needed training.

233. At this point, Ms. Williams was holding the position of Department Manager and had no complaints about her management style.

234. Ms. Williams was forced to watch men she trained promoted over her to the MIT program. She was not informed when a job became available and job vacancies were not regularly posted.

**Plaintiff Kimberly P. Roberts**

235. Plaintiff Kimberly P. Roberts was employed between 1995 and 2006 in Store Numbers 582, Port Orange, FL, and 2065, Turkey Creek, FL.

236. During employment, she started at the Port Orange Store as a Deli Manager. She then transferred to position of Grocery Receiver.

237. Ms. Roberts expressed interest in a Grocery Manager hourly position when it became available. She also expressed interest in an Assistant Manager position.

238. Ms. Roberts continued to "cross train" to "learn the store."

239. However, much to her disappointment, a male was hired into the store into the Grocery Manager position she sought.

240. After just four (4) months in the store, that same male was then promoted to the Assistant Store Manager.

241.    Ms. Roberts complained about the transfer to her Store Manager and her Supervisor,
        and had more experience, but was denied the opportunity.

242.    Instead, she was transferred to the Overnight Support Manager position, which was
        an hourly position.

243.    Finally, in 2006, and while working at the Turkey Creek Store 2065, she became
        Assistant Store Manager, which was a salaried position.

244.    In this position, she was making approximately $31,000.00/year.

245.    Ms. Roberts learned that four (4) other Assistant Managers made more than her –
        approximately $34,000 to $36,000 per year.

246.    Ms. Roberts spoke with the one (1) other female Assistant Store Manager who also
        confirmed she learned that the males were making more than her.

247.    She also learned that similarly situated males were paid more, despite same or less
        experience.

**Plaintiff Lisa Youman**

248.    Plaintiff Lisa Youman began working with Wal-Mart in 1987 as a Sales Associate,
        working her way up to Department Manager and Support Manager.

249.    From the beginning of her employment, she expressed desires for upward mobility,
        including to get into the Manager in Training Program and become a Store Manager.

250.    Despite years of employment, she never had the opportunity, as she was told she was
        "over qualified" for the program, while she watched men who were promoted straight
        from Department Manager and on to the program, without even holding a Support
        Manager position. Finally, she was nominated for the program by her assistant

managers, but still not selected. Instead, a male employee was placed into the position.

251.    She was subsequently demoted to Support Manager and then down to Department Manager, and though she was the only female and the one with the most seniority, she was chosen for the demotion.

252.    She continued attempts for manager, applying for a Support Manager position, but a less experienced male was selected for the position.

253.    Ms. Youman separated her employment in 2003.

254.    Upon information and belief, Ms. Youman believes she was paid less than other similarly situated men during her employment within Region 46.

**Plaintiff Betty Moore**

255.    Plaintiff Betty Moore joined Wal-Mart in 2005 with her Bachelor's Degree in Psychological and Secondary Education, working for years in detail as well as counseling in after-school programs and working as a Rehab Therapist, investigator, and Counselor with the Department of Children and Families.

256.    Each year of employment with Wal-Mart, Ms. Moore applied for promotional opportunities, but each time those positions were filled with men with less experience. She sought opportunities for the Support Manager position and Management in Training including by discussing during evaluations and also by applying through the computer system, but was denied.

257.    Ms. Moore separated employment in 2010.

258.    Upon information and belief, Ms. Moore believes she was paid less than other similarly situated men during her employment within Region 46.

**Plaintiff Laura Parsons**

259.  Plaintiff Laura Parsons began employment with Wal-Mart in 1995 as a Zone
      Merchandiser, continuing with intermittent employment until 1995 when she became
      a Stocker.

260.  She regularly trained male associates to become Department Managers. She pressed
      on for promotional opportunities, including applying to the position of Assistant
      Manager/Manager in Training program several times.

261.  She observed that the women who applied for the position, like her, would not even
      get as much as an interview. However, she also observed a male coworker who
      requested to be in the program get accepted and Ms. Parsons was asked to train him.

262.  Ms. Parsons learned during employment that she and her female coworkers made less
      than their male coworkers and also regularly received lower raises than their male
      counterparts.

263.  She also learned that the males she was training for positions were making more than
      her. She complained to her manager about this and was promised she would get a
      raise to catch up, but it never happened.

264.  She separated her employment in 2010.

265.  Upon information and belief, Ms. Parsons believes she was paid less than other
      similarly situated men during her employment within Region 46.

**Plaintiff Rhonda Waters**

266.  Plaintiff Rhonda Waters began employment with Wal-Mart in June 2006 and worked
      until December 2007.

267. Prior to working at Wal-Mart, Ms. Waters was employed at a children's elementary school in the afterschool program. She also had taken college coursework.

268. At hire, Ms. Waters was brought in at $7.25 per hour in Stocking.

269. She learned that similarly situated males, like Leroy, Eric, and two men named Jonathan were all making more than her ($11.00 to $12.00 per hour), despite less or similar experience.

270. During her employment, she sought promotions, and passed the tests for promotions, including to Support Manager/Area Manager and Loss Prevention Manager, but was passed over by newly hired males with less experience.

271. When Ms. Waters discussed the denial of promotions with her supervisor, he told her not to complain up the chain or she would be terminated.

272. She was subjected to comments by her Store Manager Mark that women were incapable of doing jobs that should go to men.

273. Upon information and belief, Ms. Waters believes she was paid less than other similarly situated men during her employment within Region 46.

**Plaintiff Ann Mowrey[2]**

274. Plaintiff Ann Mowrey began employment at Wal-Mart in 2002 and worked for eight years, until 2010.

275. During her employment, she applied four times for the Asset Protection Manager position at her store, a management position.

276. Each time the position went to a younger and less experienced male.

---

[2] Plaintiff Mowrey's Right to Sue has been requested from the EEOC, but has not yet been received as her Charge was pending previously in Conciliation. Upon receipt, Plaintiff Mowrey will file a Notice attaching her Right to Sue.

277.   Upon information and belief, Ms. Mowrey believes she was paid less than other similarly situated men during her employment within Region 46.

**Plaintiff Teresa Evans Cluff**

278.   Plaintiff Teresa Evans Cluff began employment with Wal-Mart in 2000 and worked for two years, until 2004.

279.   During her employment, Ms. Cluff learned about the pay disparity and after she learned that she and her fellow female coworkers were paid so little, they were unable to afford healthcare benefits and were on food stamps.

280.   Ms. Cluff questioned management "aren't you embarrassed as a newly minted Fortune 100 company that your employees cannot support their children?" The response was "no."

281.   During employment, she sought opportunities to advance to the Management in Training/ Assistant Manager position.

282.   Ms. Cluff's Store Manager said that she needed to follow the "steps" to be in the positon, including holding other positions below the management in training program.

283.   Ms. Cluff continued to cross train, but observed less-experienced males who did not have experience in the departments promoted to the training program, instead.

284.   Upon information and belief, Ms. Cluff believes she was paid less than other similarly situated men during her employment within Region 46.

**Plaintiff Tonya Colson**

285.   Plaintiff Tonya Colson was employed with Wal-Mart from 1988 through 2003, during which time she earned her Bachelor's Degree in Human Resource Management and took Master's Degree level coursework.

286.   Ms. Colson worked her way from layaway clerk to Personnel Manager in Store 1006. During employment, Ms. Colson sought opportunities to advance to Management in Training/Assistant Manager position, but was only offered hourly positions.

287.   Instead, Ms. Colson watched as men who had only been with the company a few short months were promoted over her, when she was employed for 12 years.

288.   Upon information and belief, Ms. Colson believes she was paid less than other similarly situated men during her employment within Region 46.

**Plaintiff Sherry Hue**

289.   Plaintiff Sherry Hue is a current employee with Wal-Mart with over 34 years of employment, working her way from Cashier and Floor Associate, to stocking, and overnight receiving.

290.   Throughout Ms. Hue's employment, she has sought opportunities for advancement, including Support Manager and the Management in Training program, but was told she was not qualified. Instead, she watched as lesser qualified males were placed into open positions.

291.   Upon information and belief, Ms. Hue believes she was and is paid less than other similarly situated men during her employment within Region 46.

**Plaintiff Jamie Estevez**

292.   Plaintiff Jamie Estevez joined Wal-Mart with prior experience as a server and cashier and held various positions while at Wal-Mart, as needed, including cashier and sales associate.

293.   Ms. Estevez sought opportunities to advance into management, including into the Support Manager and Management in Training/Assistant Manager position, but

watched as less experience males were placed into positions, including those without any prior Wal-Mart employment.

294.   Ms. Estevez complained to her Store Manager about not receiving the opportunities and was given no reason why she was not selected.

295.   Upon information and belief, Ms. Estevez believes she was paid less than other similarly situated men during her employment within Region 46.

**Plaintiff Vanessa McKever**

296.   Plaintiff Vanessa McKever has been employed with Wal-Mart for 13 years, since 2005, in the position of Overnight Stocker Store 1083 in Jacksonville, Florida. She joined the store with experience as a Store Manager of a gas station.

297.   During her 13 years of employment with Wal-Mart, Ms. McKever made multiple attempts for opportunities to advance to the Support Manager position, to no avail. Instead, each time she applied for the position, she watched as a male was placed into the position over her, despite complaints to her Store Manager, Daryl Reilly and her Co-Manager, Maria.

298.   Upon information and belief, Ms. Estevez believes she was paid less than other similarly situated men during her employment within Region 46.

**Plaintiff Valerie Blackshear**

299.   Plaintiff Valarie Blackshear was employed by Wal-Mart from March 2000 until her separation in 2011 at the Jacksonville, Florida Store Number 1219.

300.   During employment, Ms. Blackshear held positions of Meat Department Associate, Paper and Chemicals Associate, Department Manager of Paper and Chemicals, Department Manager of the Candy Department, and a stocker. She sought

opportunities to advance, including to Support Manager and Assistant Manager, but was told by her Manager Mike Goldstein that she was "not ready for the position."

301.     Shortly after, the position was given to a male employee with less experience.

302.     Upon information and belief, Ms. Blackshear believes she was paid less than other similarly situated men during her employment within Region 46.

**Plaintiff Anne Mantello**

303.     Plaintiff Anne Mantello has been employed with Wal-Mart for over 18 years, since 1994, in Store Number 613 in Ormond Beach, Florida.

304.     Ms. Mantello was hopeful about opportunities for advancement as she expressed desires for promotion with Steve Leeks, District Manager, and was told she was the kind of employee they were looking for – she had no one at home (she was recently widowed) and could move anywhere.

305.     Despite these assurances, she applied for the position of Assistant Manager at least three (3) times, but each time she was passed over for less experienced males. When she asked about why she did not get the position, she would be told "let me look into it," but never heard anything further.

306.     Upon information and belief, Ms. Mantello believes she was paid less than other similarly situated men during her employment within Region 46.

**Sam's Club Region 6**

**Plaintiff Korby Miller**

307.     Plaintiff Korby Miller was employed between 2000 and 2006 with both Sam's Club and Wal-Mart.

308.   Ms. Miller began working at a Wal-Mart Supercenter Store in Mesa Arizona in 2000. She was hired as part of the set-up crew and was quickly promoted to Department Manager (Men's).

309.   Ms. Miller moved to Florida and applied for a management position in May 2002, based upon her prior management/owner experience in restaurant/deli, at the Port Charlotte Sam's Club store (#8130). She was told that they would not hire Managers "directly in from the street" and that she would have to work her way up.

310.   However, less than a year after Ms. Miller was hired, a new male Assistant Manager was hired from KFC into Meat and Produce – the equivalent to her position.

311.   Ms. Miller learned he was making approximately $6,000 more than her.

312.   During employment, she was subject to sexual harassment, but when she complained to management, she was told to deal with it "on her own because she was a big girl" (after the store manager told her to eat his "Twinkie" in front of the other managers).

313.    Ms. Miller then took an Hourly Associate position in the Café in May 2002.  Her pay scale started just above those employees who collected carts.  Within a few months she had moved up to the Team Leader position.

314.   After 4-5 months she applied for Assistant Manager; interviewed and was accepted into the Manager's Training program.  She was sent to Clearwater for approximately 3 months for her Training and given the position of Fresh Manager (Assistant Manager) over the Bakery and Café in the Ft. Myers store about 45 miles away.

315.   In April of 2004 she transferred to the Las Vegas Store (#6382) keeping her position as Fresh Manager. Ms. Miller resigned in 2006.

316.   Upon information and belief, Ms. Miller believes she was paid less than other similarly situated men during her employment within Region 6.

**Plaintiff Maggie Gibbs[3]**

317.   Plaintiff Maggie Gibbs worked at both Sam's Club and Wal-Mart from 1992 through 2012, 20 years. She first worked at Store 1004 in Bradenton, FL. She was hired as an Assistant Manager and was paid salary.

318.   She was in this position for about 2 years, until she was demoted to Support Manager, and paid hourly.

319.   Ms. Gibbs then requested to be transferred because she was moving and she moved to the Sun City, FL store, and was in the position as Support Manager again, and paid hourly.

320.   Ms. Gibbs was then transferred to Sam's Club. Her position was Marketing Agent in the Marketing Department and she was paid hourly.

321.   During the duration of her employment, she constantly sought promotions to become either a Department Manager or Assistant Manager, but she never got these positions. Instead, less qualified men were always chosen for these positions, even ones who were new hires.

322.   Upon information and belief, Ms. Gibbs believes she was paid less than other similarly situated men during her employment within Region 6.

---

[3] Also worked Region 10 and asserts claims based on work in Region 10.

## STATEMENT OF CLAIMS

## COUNT I—VIOLATION OF TITLE VII
## DISPARATE TREATMENT IN WAL-MART REGION 10
## PLAINTIFFS  BUSALACCHI, KOFERL, SIMMONS, JOHNSON, JACOBSON, HERN, HICKS, RADTKA, WILLIAMS, HATTEN, GIBBS, ROHDY, SPARKS, MEDLIN, RAINEY, ADAMS, MARCHARD, POWELL, and BORRAS

323.    Plaintiffs Busalacchi, Koferl, Simmons, Johnson, Jacobson, Hern, Hicks, Radtka, Williams, Hatten, Rohdy, Gibbs, Sparks, Medlin, Rainey, Adams, Marchand, and Borras worked for Wal-Mart in Region 10. Plainitff Powell remain employed in Region 10 .

324.    Plaintiffs incorporate and reallege paragraphs 1 through 322 herein.

325.    Wal-Mart denied Plaintiffs pay equal to that earned by similarly situated men, on the basis of gender.

326.    Wal-Mart denied Plaintiffs equal opportunities for promotion to positions that they were qualified for and interested in, on the basis of gender.

327.    Wal-Mart's conduct of engaging in discrimination against its female employees working in Region 10 by making compensation and promotion decisions on the basis of gender violates Title VII of the Civil Rights Act of 1964.

328.    The Defendant has failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination from the work place and to prevent it from occurring.

329.    Wal-Mart's discriminatory practices described above have denied Plaintiffs promotional opportunities and compensation to which they are entitled, in violation of Title VII.

330.   Wal-Mart's alleged reasons, if any, for the discrimination against Plaintiffs on the basis of gender is a mere pretext, as evidenced by the pattern or practice of discrimination against female employees generally.

331.   Plaintiffs have each exhausted all of her administrative remedies prior to bringing this action. (Exhibits A).

332.   As a result of Wal-Mart's violations, the Plaintiffs have suffered damages.

333.   As a direct and proximate result of the Defendant's willful knowing and intentional discrimination, Plaintiffs have suffered and will continue to suffer pain and suffering, extreme and severe emotional distress, loss of skills, and mental anguish; Plaintiffs have incurred other incidental expenses; Plaintiffs have suffered related to the harm caused by Wal-Mart's violations.

334.   Plaintiffs have and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

335.   Plaintiffs seek an award of general and compensatory damages, reinstatement or front pay, back pay, and prejudgment interest.

336.   In addition, Plaintiffs are entitled to punitive damages for the Defendant's malice and/or reckless disregard of Plaintiffs' federally protected rights.

337.   Furthermore, Plaintiff Powell is still employed by Wal-Mart and has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein.  The injunctive relief she seeks is the only means by which she will be able to secure complete and adequate relief and end the irreparable injury she has suffered and will suffer as a result of Wal-Mart's discriminatory behavior.

338. As a further direct and proximate result of the Defendant's violation, Plaintiffs have been compelled to retain the services of the undersigned firms.  Plaintiffs will incur and continue to incur reasonable attorney's fees and costs. Plaintiffs request that their attorney's fees be awarded pursuant to Title VII.

339. Plaintiffs, therefore, request relief as provided in the Prayer for Relief below.

**COUNT II—VIOLATION OF TITLE VII
DISPARATE TREATMENT IN SAM'S CLUB REGION 6
PLAINTIFF MILLER, AND GIBBS**

340. Plaintiffs Miller, and Gibbs worked for Wal-Mart at the Sam's Club Region 6.

341. Plaintiffs incorporate and reallege paragraphs 1 through 322 herein.

342. Wal-Mart denied Plaintiffs pay equal to that earned by similarly situated men on the basis of gender.

343. Wal-Mart denied Plaintiffs equal opportunities for promotion to positions that the female employees were qualified for and interested in, on the basis of gender.

344. Wal-Mart's conduct of engaging in discrimination against its female employees working in Sam's Club Region 6 by making compensation and promotion decisions on the basis of gender violates Title VII of the Civil Rights Act of 1964.

345. Wal-Mart's discriminatory practices described above have denied Plaintiffs and other female employees promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

346. The Defendant has failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination from the work place and to prevent it from occurring.

347.     Wal-Mart's alleged reasons, if any, for their discrimination against Plaintiffs on the basis of their gender is a mere pretext, as evidence by the pattern or practice of discrimination against female employees generally.

348.     Plaintiffs have exhausted all of her administrative remedies prior to bringing this action. (Exhibit A).

349.     As a result of Wal-Mart's violations, the Plaintiffs have suffered damages.

350.     As a direct and proximate result of the Defendant's willful knowing and intentional discrimination, Plaintifs have suffered and will continue to suffer pain and suffering, extreme and severe emotional distress, loss of skills, and mental anguish; Plaintiffs have incurred incidental expenses; Plaintiffs have suffered related to the harm caused by Wal-Mart's violations.

351.     Plaintiff has and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

352.     Plaintiffs seeks an award of general and compensatory damages, reinstatement or front pay, back pay, and prejudgment interest.

353.     In addition, Plaintiffs are entitled to punitive damages for the Defendant's malice and/or  reckless disregard of Plaintiffs federally protected rights.

354.     As a further direct and proximate result of the Defendant's violation, Plaintiffs have been compelled to retain the services of the undersigned firms.  Plaintiffs will incur and continue to incur reasonable attorney's fees and costs. Plaintiffs requests that her attorney's fees be awarded pursuant to Title VII.

355.     Plaintiffs, therefore, requests relief as provided in the Prayer for Relief below.

## COUNT III—VIOLATION OF TITLE VII
## DISPARATE TREATMENT IN WAL-MART REGION 46
## PLAINTIFFS YOUMAN, MOORE, PARSONS, MEDLIN, WATERS, MOWREY,
## CLUFF, COLSON, ESTEVEZ, GRAVEDONI, AND BLACKSHEAR

356.   Plaintiffs Youman, Moore, Parsons, Medlin, Roberts, Williams, Waters, Mowrey, Cluff, Colson, Estevez, and Blackshear worked for Wal-Mart in Region 46. Plainitffs Estevez, Gravedoni, Mantello, and Hue remain employed at Region 46.

357.   Plaintiffs incorporate and reallege paragraphs 1 through 322 herein.

358.   Wal-Mart denied Plaintiffs pay equal to that earned by similarly situated men.

359.   Wal-Mart denied Plaintiffs equal opportunities for promotion to management track positions that the female employees were qualified for and interested in.

360.   Wal-Mart's conduct of engaging in discrimination against its female employees working in Region 46 by making compensation and management track promotion decisions on the basis of gender violates Title VII of the Civil Rights Act of 1964.

361.   Wal-Mart's discriminatory practices described above have denied female employees promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

362.   Wal-Mart actions or inactions were based in malice or a reckless indifference to the protected rights of Plaintiffs entitling them to an award of punitive damages.

363.   Furthermore, Plaintiffs Estevez, Gravedoni, Mantello, and Hue are still employed by Wal-Mart and have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein.  The injunctive relief they seek is the only means by which they will be able to secure complete and adequate relief and end the irreparable injury they have suffered and will suffer as a result of Wal-Mart's discriminatory behavior.

364. Wal-Mart's alleged reasons, if any, for their discrimination against Plaintiffs on the basis of their gender is a mere pretext, as evidence by the pattern or practice of discrimination against female employees generally.

365. Plaintiffs have exhausted all of her administrative remedies prior to bringing this action. (Exhibit A).

366. As a result of Wal-Mart's violations, the Plaintiffs have suffered damages.

367. As a direct and proximate result of the Defendant's willful knowing and intentional discrimination, Plaintifs have suffered and will continue to suffer pain and suffering, extreme and severe emotional distress, loss of skills, and mental anguish; Plaintiffs have incurred incidental expenses; Plaintiffs have suffered related to the harm caused by Wal-Mart's violations.

368. Plaintiff has and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

369. Plaintiffs seeks an award of general and compensatory damages, reinstatement or front pay, back pay, and prejudgment interest.

370. In addition, Plaintiffs are entitled to punitive damages for the Defendant's malice and/or reckless disregard of Plaintiffs federally protected rights.

371. As a further direct and proximate result of the Defendant's violation, Plaintiffs have been compelled to retain the services of the undersigned firms. Plaintiffs will incur and continue to incur reasonable attorney's fees and costs. Plaintiffs requests that her attorney's fees be awarded pursuant to Title VII.

372. Plaintiffs, therefore, request relief as provided in the Prayer for Relief below.

## COUNT IV—VIOLATION OF TITLE VII
## DISPARATE IMPACT IN WAL-MART REGION 10

373. Plaintiffs Busalacchi, Koferl, Simmons, Johnson, Jacobson, Hern, Hicks, Radtka, Williams, Hatten, Rohdy, Sparks, Medlin, Gibbs, Rainey, Adams, Marchand, and Borras worked for Wal-Mart in Region 10. Plainitff Powell remains employed in Region 10 .

374. Plaintiffs incorporate and reallege paragraphs 1 through 322 herein.

375. Wal-Mart has maintained a system for making decisions about compensation and promotions that has had an adverse impact on its female employees in Region 10, including the Plaintiffs. Its compensation policies for setting and adjusting pay collectively and individually, including its failure to require or use job related criteria for making compensation decisions, its policy of setting pay adjustments based on the associate's prior pay, and its 2004 pay class restructuring, have had an adverse impact on women. Its promotion policies; its failure to provide for an open application process or job posting; its relocation and travel requirements for management positions; its scheduling requirements that deny managers a consistent schedule; and its failure to apply job-related objective criteria for making management selections, have all, individually and collectively, caused this adverse impact on female employees in promotions, including the Plaintiffs.

376. In Region 10, Wal-Mart has failed to create or maintain the data that would allow analysis of the impact of each of these policies and practices individually. Nor does Wal-Mart specify the weight that should be accorded to each of its requirements for pay and promotion. Wal-Mart's pay and promotion policies and procedures are, thus, not capable of separation for analysis, and accordingly the entire decision-making

process for compensation and promotions decisions may each be analyzed as one employment practice. 42 U.S.C. 2000e-2(k)(1)(B)(i).

377. Wal-Mart's compensation and promotion policies are not job related or consistent with business necessity. Wal-Mart's own consultants and human resources staff have proposed job posting, elimination of relocation requirements, adoption of more consistent and reliable scheduling, and the use of more objective criteria for management promotions. Adopting these policies would have resulted in less discriminatory impact upon female employees, including the Plaintiffs while serving Wal-Mart's business needs more effectively than its current practices.

378. Wal-Mart's discriminatory practices described above have denied female employees promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

379. As a result of Wal-Mart's violations, the Plaintiffs have suffered damages.

380. Plaintiffs have and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

381. Plaintiffs seeks an award of economic damages, reinstatement or front pay, back pay, and prejudgment interest.

382. Furthermore, Plaintiff Powell is still employed by Wal-Mart and have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein.  The injunctive relief she seeks is the only means by which she will be able to secure complete and adequate relief and end the irreparable injury they have suffered and will suffer as a result of Wal-Mart's discriminatory behavior.

383.   As a further direct and proximate result of the Defendant's violation, Plaintiffs have been compelled to retain the services of the undersigned firms Plaintiffs will incur and continue to incur reasonable attorney's fees and costs. Plaintiffs requests that their attorney's fees be awarded pursuant to Title VII.

384.   Plaintiffs, therefore, request relief as provided in the Prayer for Relief below.

## COUNT IV—VIOLATION OF TITLE VII
## DISPARATE IMPACT IN SAM'S CLUB REGION 6

385.   Plaintiffs Miller and Gibbs incorporate and realleges paragraphs 1 through 322 herein.

386.   Wal-Mart has maintained a system for making decisions about compensation and promotions that has had an adverse impact on its female employees in Sam's Club Region 6. Its compensation policies for setting and adjusting pay collectively and individually, including its failure to require or use job related criteria for making compensation decisions, has had an adverse impact on women. Its promotion policies; its failure to provide for an open application process or job posting; its relocation and travel requirements for management positions; its scheduling requirements that deny managers a consistent schedule; and its failure to apply job-related objective criteria for making management selections, have all, individually and collectively, caused this adverse impact on female employees in promotions, including Plaintiff Forbes.

387.   In Region 6, Wal-Mart has failed to create or maintain the data that would allow analysis of the impact of each of these policies and practices individually.  Nor does Wal-Mart specify the weight that should be accorded to each of its requirements for pay and promotion. Wal-Mart's pay and promotion policies and procedures are, thus,

not capable of separation for analysis, and accordingly the entire decision-making process for compensation and promotions decisions may each be analyzed as one employment practice. 42 U.S.C. 2000e-2(k)(1)(B)(i).

388.   Wal-Mart's compensation and promotion policies are not job related or consistent with business necessity. Wal-Mart's own consultants and human resources staff have proposed job posting, elimination of relocation requirements, adoption of more consistent and reliable scheduling, and the use of more objective criteria for management promotions. Adopting these policies would have resulted in less discriminatory impact upon female employees while serving Wal-Mart's business needs more effectively than its current practices.

389.   Wal-Mart's discriminatory practices described above have denied female employees promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

390.   As a result of Wan-Mart's violations, the Plaintiffs have suffered damages.

391.   Plaintiffs have and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

392.   Plaintiffs seek an award of economic damages, reinstatement or front pay, back pay, and prejudgment interest.

393.   As a further direct and proximate result of the Defendant's violation, Plaintiffs have been compelled to retain the services of the undersigned firms Plaintiffs will incur and continue to incur reasonable attorney's fees and costs. Plaintiffs request that their attorney's fees be awarded pursuant to Title VII.

394.   Plaintiffs, therefore, request relief as provided in the Prayer for Relief below.

## COUNT V—VIOLATION OF TITLE VII
## DISPARATE IMPACT IN WAL-MART REGION 46

395.    Plaintiffs Youman, Moore, Parsons, Medlin, Roberts, Williams, Waters, Mowrey,

Cluff, Colson, Estevez, and Blackshear worked for Wal-Mart in Region 46. Plainitffs

Estevez, Gravedoni, Mantello, and Hue remain employed at Region 46.

396.    Plaintiffs incorporate and reallege paragraphs 1 through 322 herein.

397.    Wal-Mart has maintained a system for making decisions about compensation and

promotions that has had an adverse impact on its female employees in Region 46.  Its

compensation policies for setting and adjusting pay collectively and individually,

including its failure to require or use job related criteria for making compensation

decisions, has had an adverse impact on women.  Its management track promotion

policies; its failure to provide for an open application process or job posting; its

relocation and travel requirements for management positions; its scheduling

requirements that deny managers a consistent schedule; and its failure to apply job-

related objective criteria for making management selections, have all, individually

and collectively, caused this adverse impact on female employees in promotions.

398.    In Region 46, Wal-Mart has failed to create or maintain the data that would allow

analysis of the impact of each of these policies and practices individually.  Nor does

Wal-Mart specify the weight that should be accorded to each of its requirements for

pay and promotion.  Wal-Mart's pay and promotion policies and procedures are, thus,

not capable of separation for analysis, and accordingly the entire decision-making

process for compensation and promotions decisions may each be analyzed as one

employment practice. 42 U.S.C. 2000e-2(k)(1)(B)(i).

399.    Wal-Mart's compensation and promotion policies are not job related or consistent with business necessity.  Wal-Mart's own consultants and human resources staff have proposed job posting, elimination of relocation requirements, adoption of more consistent and reliable scheduling, and the use of more objective criteria for management promotions.  Adopting these policies would have resulted in less discriminatory impact upon female employees while serving Wal-Mart's business needs more effectively than its current practices.

400.    Wal-Mart's discriminatory practices described above have denied female employees promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

401.    Furthermore, Plaintiffs Estevez, Gravedoni, Mantello, and Hue are still employed by Wal-Mart and have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein.  The injunctive relief they seek is the only means by which they will be able to secure complete and adequate relief and end the irreparable injury they have suffered and will suffer as a result of Wal-Mart's discriminatory behavior.

402.    Plaintiffs, therefore, request relief as provided in the Prayer for Relief below.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

a.    A declaratory judgment that the practices complained of in this Amended Complaint are unlawful and violate 42 U.S.C. § 2000(e), et. seq., Title VII of the Civil Rights Act of 1964;

b.    General and compensatory damages;

c.    Reinstatement or front pay;

d.   Back pay;

e.   Punitive damages;

f.   Costs incurred, including reasonable attorneys' fees, to the extent allowable by law;

g.   For the current employees, Powell, Gravedoni, Hue, McKever, and Mantello, a permanent injunction against Wal-Mart and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs and usages set forth herein. Such relief at minimum should include professional designed job analyses of all job positions and identification of objective, nondiscriminatory criteria for promotion and compensation decisions, record keeping that requires documentation of promotion decisions, open application and job posting procedures for promotion, training and accountability measures to ensure consistent, nondiscriminatory decision-making, and affirmative action to provide lost promotion opportunities to Plaintiffs Powell, Gravedoni, Hue, McKever, and Mantello.

h.   Pre-Judgment and Post-Judgment interest, as provided by law; and

i.   Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a jury trial on all issues, claims, actions, and defenses in this case.

Dated this 1st day of February 2018.

Respectfully submitted,

s/ Cathleen Scott
Cathleen Scott, Esq.
Florida Bar No.: 135331
Cscott@scottwagnerlaw.com
Lindsey Wagner, Esq.
lwagner@scottwagnerlaw.com
**Scott Wagner and Associates, P.A.**
Jupiter Gardens
250 South Central Boulevard, Suite 104
Jupiter, FL 33458
Telephone: (561) 653-0008
Facsimile: (561) 653-0020

Leslie M. Kroeger, Esq.
Florida Bar No.: 989762
lkroeger@cohenmilstein.com
Diana L. Martin
Florida Bar No. 624489
dmartin@cohenmilstein.com
**Cohen Milstein Sellers & Toll, PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401

Joseph M. Sellers, Esq.
JSellers@cohenmilstein.com
Christine E. Webber, Esq.
Cwebber@cohenmilstein.com
**Cohen Milstein Sellers & Toll, PLLC**
1100 New York Ave NW, Suite 500 West
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699